**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
LISA DATIZ,

                                        Plaintiff,

                                                                    **REPORT AND**
                                                                    **RECOMMENDATION**
                  - against -
                                                                    CV 15-3549 (ADS) (AKT)

INTERNATIONAL RECOVERY
ASSOCIATES, INC.,

                                        Defendant.
--------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

        Plaintiff Lisa Datiz ("Plaintiff") brings the instant action alleging violations of the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").  *See generally* Amended

Complaint ("Am. Compl.") [DE 17].  Plaintiff's claims arise out of the content of a collection

letter delivered to Plaintiff by Defendant in an attempt to collect a debt.  Presently before the

Court are the parties' cross-motions for summary judgment.[1]  *See generally* Plaintiff's

Memorandum in Support of her Motion for Summary Judgment ("Pl.'s Mem.") [DE 70];

Defendant's Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem.")

[DE 67-2].  Having considered the moving papers and the applicable law, and having heard oral

argument of the cross-motions on June 28, 2018, the Court respectfully recommends to Judge

---

[1]      As explained in greater detail, *infra*, Plaintiff moves with respect to Counts III and IV
of the Amended Complaint, which are the only two remaining counts following Judge Spatt's
decision on Defendant's motion to dismiss.  *See* DE 33.  Although Defendant does not specify,
the Court assumes that it moves for judgment as to both remaining counts.

Spatt that Defendant's motion for summary judgment be DENIED, and Plaintiff's motion for summary judgment be GRANTED.

## II.   BACKGROUND

### A.   Factual Background

The following facts are drawn from the parties' Rule 56.1(a) Statements of Material Facts; Rule 56.1(b) Counterstatements of Material Facts; the affidavits submitted in support of and in opposition to each party's motion and the exhibits attached to those affidavits; and the memoranda of law filed in support of and in opposition to each party's motion.  The facts cited here are undisputed unless otherwise noted.  In considering each motion for summary judgment, the Court construes the facts in the light most favorable to the party opposing the respective motion.  *Coastal Pipeline Prod. of New York v. Gonzales*, No. 04 CIV. 8252, 2006 WL 473883, at *4 (S.D.N.Y. Feb. 28, 2006); *see Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

Both parties agree on the general circumstances concerning the issuance of the collection letter at issue in this case.  Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3) and Defendant is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).  Plaintiff's Statement of Material Facts ("Pl.'s SMF") [DE 71] ¶¶ 1, 2; Defendant's Counterstatement of Material Facts ("Def.'s CSMF") [DE 72-3] ¶¶ 1, 2.  Plaintiff incurred a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5), and sometime after incurring the debt, but before February 13, 2015, Plaintiff is alleged to have fallen behind on payments purportedly owed on the debt.  Pl.'s SMF ¶¶ 3, 4; Def.'s CSMF ¶¶ 3, 4.  The debt

allegedly incurred by Plaintiff was assigned or otherwise transferred to Defendant for collection.[2]  Pl.'s SMF ¶ 5.

In an effort to collect the debt allegedly owed by Plaintiff, Defendant contacted Plaintiff by letter dated February 13, 2015.  Pl.'s SMF ¶ 6; Def.'s CSMF ¶ 6.  This letter forms the basis for the claims in this action, and its text is reproduced below in full:

### INTERNATIONAL RECOVERY ASSOCIATES, INC.

**195 Smithtown Boulevard, Nesconset, New York 11767
PO Box 651, Nesconset, New York 11767**

**(631) 361-3500 • 1-800-PAY-3500 • Fax (631) 360-0086**

File #:  ████2533                                                                              February 13, 2015

Re:                           John T. Mather Hospital
Balance Due:           $636.15
File #:                       ████2533
Service Date/Last Charge: 07-09-14/07-09-14

Dear Sir/Madam:

Please be advised that this account has been listed with our office for collection.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This communication is from a debt collection agency and this is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

Chrisinda Otero
International Recovery Associates

New York City License #1005026

CCU023000IRA-01

PO Box 651

---

[2]  Defendant purports to dispute this fact, stating that "[t]he Defendant was retained by John T. Mather Hospital to collect the Plaintiff's debt on behalf of John T. Mather Hospital who owns the Plaintiff's debt and is otherwise the creditor to whom the debt is owed."  Def.'s CSMF ¶ 5.  Defendant fails to cite to evidence in the record supporting its assertion.  *See id.*

Nesconset NY 11767-0651
CHANGE SERVICE REQUESTED

February 13, 2015                            International Recovery Associates, Inc.
                                            PO Box 651
IRA-01          520842869                    Nesconset NY 11767-0651
||||||||||||||||||||||||||||||||||||||||||||||||||||||||   xxxxxxxxxxxxxx
Lisa Datiz
107 Vista View Dr.
Farmingville NY 11738-3001

                                            File #:            ████2533
                                            Balance Due:       $636.16

Pl.'s SMF ¶ 7; Def.'s CSMF ¶ 7; Am. Compl., Ex. 1.

Both parties agree that this letter is a "communication" as defined by the FDCPA, 15

U.S.C. § 1692a(2), and that it was the initial written communication sent by Defendant to the

Plaintiff.  Pl.'s SMF ¶¶ 8, 9; Def.'s CSMF ¶¶ 8, 9.[3]

## B.    Procedural Background

Plaintiff filed the initial Complaint in this action on June 17, 2015, asserting three causes

of action under the FDCPA and one cause of action under the New York General Business Law,

§ 349.  *See* DE 1.  After failing to answer or otherwise appear, the Clerk of the Court noted

Defendant's default on September 8, 2015.  *See* DE 8.  Shortly thereafter, on September 17,

2018, counsel for Plaintiff agreed to vacate the Clerk's entry of default.  *See*     DE 9.  Defendant

filed a motion to dismiss the initial Complaint on October 7, 2015, *see* DE 14-15, following

which Plaintiff filed its Amended Complaint -- the operative pleading in this case.  *See* DE 17.

---

[3]  It is worth noting that these several facts are the facts as laid out by the Plaintiff, and
each contains proper citations to the record.  In support of its cross-motion, Defendant submits a
Rule 56.1(a) Statement of Material Facts which contains 16 purported material facts.  In support
of these, Defendant cites three sources:  (1) "Records maintained in the regular course of
business" by either "JTHM" or "the Defendant," *see* Defendant's Statement of Material Fact
("Def.'s SMF") [DE 67-1] ¶¶ 1-7; (2) the collection letter itself, *see id*. at ¶¶ 8-13; or (3)
"Wikipedia, The Free Encyclopedia."  *See id*. at ¶¶ 14-16.  To the extent Defendant cites the
collection letter, the parties do not dispute the letter's content.  The remaining two categories are
not proper source citations to the record, and, as such, the Court declines to consider the
assertions associated with these citations.  *See* FED. R. CIV. P. 56(c)(3).

The Amended Complaint asserts four causes of action under the FDCPA. *See generally* Am.
Compl. Following Plaintiff's filing of the Amended Complaint, Judge Spatt denied as moot
Defendant's motion to dismiss the initial Complaint. *See* DE 18.

On October 19, 2015, Defendant moved to dismiss the Amended Complaint. *See* DE 21.
Plaintiff filed her opposition on December 15, 2015 and Defendant filed its reply on January 5,
2016. *See* DE 29, 30. Judge Spatt issued a Memorandum and Decision on Defendant's motion
on August 4, 2016. *See* DE 33. In that decision, Judge Spatt dismissed the first cause of action
which asserted a violation of Section 1692f based on an alleged $3.00 processing fee charged to
consumers by Defendant. *See id.* at 11. Judge Spatt also dismissed the second cause of action
which asserted a violation of Section 1692e based on an alleged representation appearing on
Defendant's website that Defendant was entitled to receive a $3.00 processing fee from
consumers. *See id.* at 15. Judge Spatt denied Defendant's motion as to the third cause of action.
That claim asserts a violation of Section 1692g(a)(2) based on the collection letter's failure to
adequately identify the name of the creditor to whom Plaintiff owed a debt. *See id.* at 16-23.
Judge Spatt also denied the motion as to the fourth cause of action which asserts a violation of
Section 1692e based on the collection letter's failure to clearly and accurately identify the
creditor to whom Plaintiff's debt is owed. *See id.* at 23-34.

On August 16, 2018, Defendant filed a motion seeking an order certifying an
interlocutory appeal of Judge Spatt's decision on the motion to dismiss. *See* DE 34. On
October 10, 2016, Defendant filed a motion to vacate that portion of the decision denying
Defendant's motion to dismiss.[4] *See* DE 39. Both motions were opposed by the Plaintiff. *See*

---

[4] Defendant's motion to vacate was based primarily on its interpretation of a report of
Plaintiff's expert, Alan M. Perlman, Ph.D., a forensic linguist. *See generally* DE 39-1.

DE 35, 40.  In a Memorandum and Decision dated January 4, 2017, Judge Spatt denied

Defendant's motion to vacate, as well as its motion to certify an interlocutory appeal.  *See*

DE 44.

On February 8, 2017, Defendant submitted a letter to this Court accusing Plaintiff's

counsel of disingenuously concealing his intention to move for summary judgment until after

Defendant had spent "thousands of dollars in expert witness costs and legal fees based upon

[counsel for Plaintiff's] representation to [this Court] that the issue concerning the name of the

creditor would be presented to a jury."  DE 49 at 2.  Subsequently, on March 3, 2017,

Defendant's counsel filed a letter motion "to Compel Plaintiff to proceed to trial by jury."

DE 51.  Specifically, Defendant's counsel argued that Plaintiff and its counsel had "acted in bad

faith" and urged the Court to enforce an alleged oral stipulation entered into on the record at the

August 23, 2016 Status Conference in which Plaintiff's counsel allegedly waived Plaintiff's right

to engage in summary judgment motion practice.  DE 51 at 3.  After reviewing the transcript of

the August 23, 2016 conference referenced by Defendant, this Court issued an Order on May 1,

2017, finding that no binding stipulation had been entered into between the parties which would

indicate an intent to waive summary judgment motion practice.  *See* DE 60 at 5.  This Court

determined that it would not be appropriate to preclude Plaintiff from engaging in dispositive

motion practice "merely because Defendant has spent significant sums of money preparing this

case for trial."  DE 60 at 7.

On July 11 and 12, 2017, both parties filed requests for a pre-motion conference with

Judge Spatt for purposes of moving for summary judgment.  *See* DE 61, 62.  At a conference

held on July 31, 2017, Judge Spatt concluded the case was not amenable to settlement and he set

a briefing schedule for the parties' dispositive motions.  *See* DE 66.  Between September 12,

2017 and October 26, 2017, the parties filed their respective motions for summary judgment. *See* DE 67-75.  Counsel for both parties subsequently attempted to file notices of supplemental authority with the Court, *see* DE 76-78, which Judge Spatt precluded, pointing out that such filings were improper sur-replies.  *See* Electronic Order dated March 3, 2018.  On March 28, 2018, Judge Spatt referred the parties' cross-motions for summary judgment to this Court for a Report and Recommendation as to whether the motions should be granted.  *See* DE 79. Subsequent to the referral of the motions, Defendant moved to file a sur-reply and for oral argument on the motions, which Plaintiff opposed.  *See* DE 80, 81.  This Court denied Defendant's motion to file a sur-reply; however, the Court did set the cross-motions down for oral argument on June 28, 2018.  *See* DE 84.

At the oral argument on June 28, 2018, Defendant's counsel requested permission to submit additional case citations in support of Defendant's argument that this case should be heard by a jury.  The Court gave Defendant's counsel 14 days to do so, instructing counsel that the filing was limited strictly to case citations (omitting all argument), and not to exceed two pages.  Plaintiff's counsel was given 14 days thereafter to submit opposition, also limited to two pages and case citations only.[5]  On July 12, 2018, Defendant's counsel filed a letter directed to this Court indicating that he was withdrawing his request to provide further citations.[6]  *See* DE 89.

---

[5]   Following oral argument, on July 9, 2018 Defendant's counsel filed a letter directed to Judge Spatt requesting that Judge Spatt verify a purported off-the-record statement made at the summary judgment pre-motion conference on July 31, 2017 which Defendant's counsel believes bolsters his position in opposition to Plaintiff's motion.  *See* DE 86.  No order has yet been issued by Judge Spatt, and that filing does not impact the Court's decision here.

[6]   The Court issued an Order in response to Defendant's submission pointing out the contents of the audio transmission of the conference and the inaccuracy of the representation made by Defendant's counsel.  *See* DE 90.

C.        **The Parties' Motions for Summary Judgment**

     *1.*        *Plaintiff's Motion*

          a.        **Plaintiff's Opening Brief**

Plaintiff argues that under the applicable Second Circuit standard of review for compliance with the FDCPA, Defendant's collection letter violates 15 U.S.C. § 1692g(a)(2) because it does not clearly identify the creditor to whom Plaintiff's debt is owed. *See* Pl's Mem. at 3-6. Plaintiff argues that under this legal standard -- the objective "least sophisticated consumer" standard -- the caption of Defendant's collection letter fails to adequately identify the John T. Mather Hospital as the Plaintiff's current creditor. *Id.* at 2, 4. Plaintiff also argues that Judge Spatt already made this determination in his decision on Defendant's motion to dismiss. Specifically, Judge Spatt had found that "the fact that the caption [of the] Letter lists John T. Mather Hospital is not, without more explanation, sufficient to satisfy Section 1692g(a)(2) because it does not identify the Hospital as the Plaintiff's current creditor." *Id.* at 1 (quoting *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2016 WL 4148330, at *11 (E.D.N.Y. Aug. 4, 2016), *motion for relief from judgment denied*, No. 15-CV-3549, 2017 WL 59085 (E.D.N.Y. Jan. 4, 2017)). Additionally, Plaintiff argues that because the collection letter fails to comply with 15 U.S.C. § 1692g(a)(2), it is also a *de jure* violation of 15 U.S.C. § 1692e. For these reasons, Plaintiff contends that she is entitled to summary judgment on both of the remaining counts of the Amended Complaint.

In support of her motion, Plaintiff points to *McGinty v. Prof'l Claims Bureau*, a recent decision from this district, and contends that *McGinty* affirmed Judge Spatt's reasoning on Defendant's motion to dismiss by finding that "[m]erely including the current creditor's name in a debt collection letter, without more, is insufficient to satisfy 15 U.S.C.        § 1692g(a)(2)."

Pl.'s Mem. at 5 (quoting *McGinty v. Prof'l Claims Bureau, Inc.*, No. 15-CV-4356, 2016 WL

6069180, at *4 (E.D.N.Y. Oct. 17, 2016)).

Plaintiff also addresses "certain representations Defendant has informally made to the

Court . . . concerning the deposition testimony of Plaintiff's expert witness, Dr. Alan Perlman."

Pl.'s Mem. at 7.  Plaintiff reiterates that, notwithstanding Defendant's representations that

Plaintiff's expert witness actually supports Defendant's position, "courts within the Second

Circuit have unequivocally stated that determinations made under the least sophisticated

consumer standard are objective determinations that may be made as a matter of law."  *Id*. at 8.

### b.      **Defendant's Opposition**

At the outset of its opposition, Defendant argues that the Court should not apply the "least

sophisticated consumer" standard in reviewing Defendant's collection letter under 15 U.S.C.

§ 1692g(a)(2).  *See* Defendant's Opposition to Plaintiff's Motion ("Def.'s Opp'n.") [DE 72] at 2.

According to the Defendant, "[t]he letter specifically refers to a debt incurred by the Plaintiff to

John T. Mather Hospital . . . . Under no circumstances could a [least sophisticated consumer] be

confused or misled about the factual circumstances about a debt incurred to a creditor which is

*specific* to the Plaintiff."  *Id*. (emphasis in original).  Based on this conclusion, the argument

goes, "the Defendant's letter can only be interpreted subjectively by the Plaintiff and by other

persons who may have received medical services from JTMH."  *Id*. at 2-3.  In contrast to this

subjective standard which Defendant argues is applicable under Section 1692g(a)(2), Defendant

contends that the appropriate standard under Section 1692e is "an *objective* standard based upon

whether the [least sophisticated consumer] would be deceived by a statement made in a

collection communication."  *Id.* at 3 (emphasis added).  Defendant further argues that the report

and deposition testimony of Plaintiff's expert, Dr. Alan Perlmann, create a genuine dispute as to certain material facts.[7]  *See* Def.'s Opp'n. at 3-5, 9-23.

As to Judge Spatt's decision on Defendant's motion to dismiss the Amended Complaint, Defendant argues that Plaintiff's reliance on this decision is misplaced.  According to the Defendant, "the Court's August 4, 2016 Memorandum of Decision and Order has little value to the Plaintiff in her attempt to establish that the 'failure to name the creditor' claim constitutes an FDCPA violation as a matter of law.  The same applies to *McGinty v. Prof'l. Claims Bureau*, the other motion to dismiss decision relied upon by the Plaintiff in her motion."  Def.'s Opp'n. at 7.

### c.  Plaintiff's Reply

In the reply memorandum, Plaintiff's counsel flatly rejects Defendant's assertion that the "least sophisticated consumer" standard is inapplicable to the instant case because of Plaintiff's circumstances, arguing that "the Second Circuit has made clear that the least sophisticated consumer standard 'pays no attention to the circumstances of the particular debtor in question.'" Plaintiff's Memorandum in Reply ("Pl.'s Reply") [DE 75] at 2 (citation omitted).  According to Plaintiff, a subjective, fact-specific interpretation of a collection letter, as Defendant advocates, would eviscerate the purpose of the FDCPA:  "[i]ndeed, *every* letter-based FDCPA action arises from a fact-specific situation particular to the consumer in question.  As such, if Defendant were

---

[7]  Defendant takes issue with what it perceives to be Plaintiff's failure to adequately utilize her own expert's report and testimony, contending that this is proof positive that Plaintiff's witness has actually "revealed himself as an expert for the Defendant."  Def.'s Opp'n. at 6.

At oral argument, much of Defendant's argument focused on the significance of Plaintiff's expert report and deposition testimony in setting this case apart from the usual FDCPA cases and in support of the argument that because this case is atypical, the Court should decline to apply the "least sophisticated consumer" standard.

correct, the least sophisticated consumer standard would *never* apply." *Id*. at 3 (emphasis in original).

Plaintiff also argues that the reasoning set out in Judge Spatt's decision on Defendant's motion to dismiss is equally applicable to the instant summary judgment motions. *See* Pl.'s Reply at 3-6. The reason, Plaintiff argues, is that the application of the least sophisticated consumer standard is objective, and yields determinations as a matter of law. *Id*. at 3.

Lastly, Plaintiff takes issue with Defendant's "meandering criticism of Dr. Perlman's deposition testimony and expert report. . . . Defendant ignores Dr. Perlman's actual opinion, and instead cherry-picks portions of his testimony out of context to support Defendant's fantastic perversion of Dr. Perlman's words[.]" Pl.'s Reply at 6.

### 2.     *Defendant's Motion*

#### a.     **Defendant's Opening Brief**

Defendant's own motion for summary judgment repeats many of the arguments presented in opposition to Plaintiff's motion. With respect to the appropriate standard of review, Defendant argues that "[i]n evaluating a claim for violation of 15 U.S.C. § 1692(e), [*sic*] a court must use an objective standard based upon whether the 'least sophisticated consumer' [ ] would be deceived by a statement made in a collection communication." Def.'s Mem. at 7. Defendant points out that the least sophisticated consumer standard "is designed to protect . . . debt collectors from bizarre or idiosyncratic interpretations of statements made in collection communications. Even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id*.

A large portion of Defendant's memorandum in support of its motion, similar to its opposition to Plaintiff's motion, cites extensively to the deposition testimony and report of Plaintiff's expert witness, Dr. Perlman.  *See* Def.'s Mem. at 8-16.  While taking issue with substantial portions of the substance of Dr. Perlman's findings, Defendant simultaneously argues that Dr. Perlman's "opinion demonstrates that there is a series of logical deductions from the content of the Defendant's collection letter which unequivocally leads to the identification of JTMH as the creditor to whom a debt is owed."  *Id*. at 14.

The remainder of Defendant's memorandum in support is dedicated to citing other cases, many from beyond this Circuit, *see* Def.'s Mem. at 16-20, as well as to arguing that Judge Spatt's denial of Defendant's motion to dismiss the Amended Complaint is not relevant to the instant motions for summary judgment.  *See id.* at 20-22.

### b.      Plaintiff's Opposition

Plaintiff echoes many of the arguments raised in her initial and reply memoranda. Plaintiff again argues that, notwithstanding Defendant's dedication of eight full pages of its memorandum to "meandering criticism of the expert report and deposition testimony of Dr. Perlman . . . . Dr. Perlman's ultimate opinion [is] that, to a reasonable degree of certainty in the field of forensic linguistics, and from a linguistic standpoint, *the letter does not adequately identify the creditor to whom the debt is owed*."  Plaintiff's Memorandum in Opposition to Defendant's Motion ("Pl.'s Opp'n.") [DE 73] at 6 (emphasis in original).  However, according to Plaintiff, Dr. Perlman's testimony is not material to the instant motions, since "in the Second Circuit, whether Defendant's letter would confuse the 'least sophisticated consumer' is a pure question of law for the Court."  *Id*. at 5.  Plaintiff also takes issue with the cases cited by

Defendant, arguing that the reasoning of these cases -- many from beyond this Circuit -- has not been endorsed by courts in the Second Circuit. *See id.* at 7-9.

The final section of Plaintiff's opposition reiterates the argument that, because this case places a pure question of law before the Court, Judge Spatt's reasoning in his decision on Defendant's motion to dismiss is equally applicable to the Court's decision on the instant motions for summary judgment. *See* Pl.'s Opp'n. at 9-10.

<h4 style="text-align:center">c.     Defendant's Reply</h4>

Defendant's memorandum in reply is focused almost exclusively on the argument that Plaintiff has failed to refute Defendant's analysis of Plaintiff's expert witness.  Defendant contends -- as it does in opposition to Plaintiff's motion -- that the Plaintiff is attempting to obfuscate expert testimony she thinks will harm her case:  "[t]he Plaintiff cannot refute the Defendant's precise dissection of the expert report submitted by Dr. Alan Perlman and his subsequent deposition testimony. Initially, Plaintiff's 'They made me do it!!' argument must (again) be debunked."  Defendant's Memorandum in Reply ("Def.'s Reply") [DE 74] at 2.

## III.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to

the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir.

2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005). In dispatching this task,

a court need only consider admissible evidence. *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir.

2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Hilaire*, 54 F. Supp. 3d at

251.

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden

shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."

*Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*,

No. 09 Civ. 5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012). "[T]he nonmovant cannot

rest on allegations in the pleadings and must point to specific evidence in the record to carry its

burden on summary judgment." *Salahuddin*, 467 F.3d at 273; *see McPherson v. N.Y.C. Dep't of

Educ.*, 457 F.3d 211, 215 n.4 (2d Cir 2006) ("[S]peculation alone is insufficient to defeat a

motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101

(2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-

moving party must offer enough evidence to enable a reasonable jury to return a verdict in its

favor."). Summary judgment is mandated if the non-moving party fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*see Dobbs v. Dobbs*, No. 06 Civ. 6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008)

("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal

quotation marks omitted).

Significantly, the above standard also applies where, as here, both parties have filed cross-

motions for summary judgment. In such circumstances, "each party's motion must be examined

14

on its own merits, and in each case all reasonable inferences must be drawn against the party

whose motion is under consideration."  *Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 627

(S.D.N.Y. 2010) (quoting *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001) and

citing *S.E.C. v. Lyon,* 605 F. Supp. 2d 531, 540 (S.D.N.Y. 2009)).

## IV.   DISCUSSION

### A.    Summary Judgment and the Appropriate Legal Framework

#### 1.    *Whether Summary Judgment is Warranted*

The Court finds it helpful to begin its discussion by addressing whether summary

judgment is even appropriate in this matter.  As noted, Defendant argues that the existence of an

expert report and expert deposition testimony sets this case apart from other FDCPA cases and

obligates the Court to consider such evidence.  According to the Defendant, the expert's report

and testimony, when considered, necessitate the Court's granting summary judgment for

Defendant, or, at a minimum, denying both motions and allowing a jury to decide whether

Defendant's collection letter violates the FDCPA.[8]

The Court respectfully disagrees with the Defendant.  As a threshold matter, "[i]n the

Second Circuit, the least sophisticated consumer standard may be applied as a matter of law and

thus is an appropriate issue for disposition on a motion for summary judgment."  *DeLeon v.*

*Action Collection Agency of Boston*, No. 17-CV-8899, 2018 WL 2089343, at *2 (S.D.N.Y.

May 3, 2018) (quoting *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 253 (S.D.N.Y.

2011)); *Berger v. Suburban Credit Corp.*, No. 04 CV 4006, 2006 WL 2570915, at *3 (E.D.N.Y.

Sept. 5, 2006) (citing *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237-38 (2d Cir. 1998))

---

[8]   At oral argument, Defendant's counsel vigorously argued that this case should be
presented to a jury.

15

("[T]he Second Circuit has indicated that the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law because the standard is an objective one."); *see Diaz v. Residential Credit Sols., Inc.*, 965 F. Supp. 2d 249, 256 (E.D.N.Y. 2013) (internal citation omitted) ("Although courts are divided on whether [a] breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law."); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013) (same); *Shami v. Nat'l Enter. Sys*., 914 F. Supp. 2d 353, 359 (E.D.N.Y. 2012) (noting that "[w]hether or not the wording of a collection letter is misleading to the 'least sophisticated consumer' is a question of law" for the court); *Ehrich v. I.C. Sys., Inc*., 681 F. Supp. 2d 265, 269 (E.D.N.Y. 2010) (same).

    While the Court has come across a handful of FDCPA cases in this Circuit in which the existence of certain record evidence factored into a court's decision on a dispositive motion, *see, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007) ("I [ ] determine that Dewees' claim that the letter fails to identify the creditor is plausible and can withstand a motion to dismiss.  Using surveys of unsophisticated consumers, expert testimony, and/or other evidence, Plaintiff may be able to establish that the Letter would have failed to identify the creditor to the least sophisticated consumer."); *Beeman v. Lacy, Katzen, Ryen & Mittleman*, 892 F. Supp. 405, 413 (N.D.N.Y. 1995) (denying cross-motions for summary judgment and holding that "[b]oth parties are entitled to present expert proof to the jury regarding the effect the language of the letter would have on the least sophisticated consumer."), these decisions appear to run counter to the general trend in this Circuit treating the application of the least sophisticated consumer standard as a matter of law for the court.  *See Schweizer* 136 F.3d at 237 ("[C]ourts have increasingly treated as questions of 'law,' various judgments about

the way in which the 'least sophisticated consumer' would interpret particular debt collection claims") (citation omitted); *Vega v. Credit Bureau Enterprises*, No. 02-CV-1550, 2005 WL 711657, at *9 (E.D.N.Y. Mar. 29, 2005) ("[H]ow the least sophisticated consumer would interpret the defendant's form debt collection letter can be determined without the aid of expert testimony at trial."); *Nicholson v. Forster & Garbus LLP*, No. 11-CV-524, 2013 WL 2237554, at *3 n.6 (E.D.N.Y. May 17, 2013), *aff'd*, 570 F. App'x 40 (2d Cir. 2014) ("The Court rejects plaintiff's argument that it must allow a jury to determine whether defendants' conduct was misleading. . . . Whether a communication by a debt collector is misleading to the least sophisticated consumer is an objective question that may be determined by the Court as a matter of law."); *see also* Christian Stueben, *Judge or Jury? Determining Deception or Misrepresentation Under the Fair Debt Collection Practices Act,* 78 Fordham L. Rev. 3107, 3137 (2010) (exploring the varied approaches in determining FDCPA violations between the circuits, and observing that "in the Second Circuit, the judge steps into the shoes of the least sophisticated consumer and determines if a letter is 'open' to an inaccurate interpretation").

Based on the observable trend in the case law of this Circuit, this Court is satisfied that the parties' cross-motions for summary judgment present only questions of law, and are therefore amenable to disposition on summary judgment.  Specifically, the Court must decide, as a matter of law, (1) whether the Defendant's collection letter adequately sets out "the name of the creditor to whom the debt is owed," pursuant to 15 U.S.C. § 1692g(a)(2), and (2) whether the Defendant's collection letter constitutes or contains "any false, deceptive, or misleading representation," pursuant to 15 U.S.C. § 1692e.  Because resolving these questions involves only legal determinations, the Court declines to consider the expert report and deposition testimony of Dr. Alan Perlman and limits its inquiry to the four corners of Defendant's collection letter.

17

However, it is worth noting that even were the Court to consider the expert report and deposition testimony of Dr. Perlman, none of that information mandates the denial of both motions -- let alone an award of summary judgment for Defendant -- as Defendant argues. Neither Dr. Perlman's expert report nor his deposition testimony raise a genuine issue of material fact.

By way of example, where courts have found genuine issues of material fact in the FDCPA context, such disputes often involve disagreements as to if, when, how, and by whom an alleged "communication" is made by a debt collector.  *See, e.g. Vincent v. The Money Store*, 736 F.3d 88, 103 (2d Cir. 2013) ("[W]hen determining whether a representation to a debtor indicates that a third party is collecting or attempting to collect a creditor's debts, the appropriate inquiry is whether the third party is making *bona fide* attempts to collect the debts of the creditor or whether it is merely operating as a 'conduit' for a collection process that the creditor controls. [ ] This is a question of fact."); *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539, 2016 WL 1274541, at *6 (E.D.N.Y. Mar. 31, 2016) ("Whether a collector or creditor intended to take action presents a fact issue that may not be resolved at the motion to dismiss phase and is often a disputed question of fact which precludes summary judgment."); *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 259 (E.D.N.Y. 2012), *order amended on reconsideration*, No. CV 10-3983, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013).  The instant case presents no such disputes.  Perhaps more importantly, and indeed part and parcel of this action, the objective *content* of the communication at issue -- Defendant's letter -- is not in dispute.[9]

---

[9]  Defendant contends that "a jury would be able to consider that the expert's opinion demonstrates that there is a series of logical deductions from the content of the Defendant's collection letter which unequivocally leads to the identification of JTMH as the creditor to whom

Because Dr. Perlman's report and deposition testimony do not create a dispute as to (1) how, when, and by whom Defendant's letter was issued, or (2) the objective content of the letter, the Court determines that they are of no consequence to the disposition of the instant motions. *See Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. 1999) (finding summary judgment appropriate where there was "no material dispute as to the contents" of the defendant-debt collector's communication to the plaintiff-debtor).

### 2.   *Applicability and Contours of the "Least Sophisticated Consumer" Standard*

As the Court observed in summarizing the parties' motions, Defendant's arguments with respect to the correct standard of review of FDCPA claims are inconsistent at best. Defendant's motion papers appear to recognize the correct standard -- the least sophisticated consumer standard -- but Defendant nonetheless argues that its application is limited to review of alleged violations of 15 U.S.C. § 1692e (and inapplicable to review of alleged violations of 15 U.S.C. § 1692g). *See* Def.'s Mem. at 7. Defendant simultaneously contends that the least sophisticated consumer standard should not apply to Defendant's collection letter based on the fact-specific circumstances underlying the letter:

> [u]nder no circumstances could a LSC be confused or misled about the factual circumstances about a debt incurred to a creditor which is *specific* to the Plaintiff and other persons who may have received medical services from the same medical provider. . . .
>
> The Plaintiff's FDCPA claim is strictly fact specific to the herein Plaintiff and to other persons who may have received medical services from JTMH. Thus the Defendant's letter can only be

─────────────

a debt is owed." Def.'s Opp'n. at 20. Defendant's counsel stressed this contention during oral argument. Although application of the least sophisticated consumer standard involves a legal determination, and although the Court does not address the substance of Dr. Perlman's report and testimony in reaching its conclusion in this Report and Recommendation, the Court is skeptical that a reasonable jury could determine that a collection letter requiring a "series of logical deductions" would be clear to the least sophisticated consumer.

> interpreted subjectively by the Plaintiff and by other persons who may have received medical services from JTMH.

Def.'s Opp'n. at 2-3 (emphasis in original).

Elaborating on Defendant's position at oral argument, counsel acknowledged that courts in this Circuit have recognized the least sophisticated consumer standard as the correct standard. However, because of the unique circumstances of this case -- namely, the existence of an expert report and deposition testimony -- Defendant's counsel contends that this Court should dispense with the least sophisticated consumer standard and conduct a subjective, fact-specific review of Defendant's letter.

The question of if and how to apply the least sophisticated consumer standard goes hand-in-hand with the question, already addressed at length above, of whether to look beyond the terms of Defendant's letter and consider the record evidence in this case.  The Court declines Defendant's invitation to either (1) jettison the least sophisticated consumer standard based on the circumstances of this case, or, to the extent Defendant is asking,[10] (2) apply the least sophisticated consumer standard in a subjective, fact-specific way.

With respect to the applicability of the legal standard, it is settled law in this Circuit that "the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). "[T]he determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law because the standard is an objective one."

---

[10]   As Judge Spatt noted in his decision on Defendant's motion to vacate, in addition to -- or perhaps rather than -- arguing for a truly subjective standard, "[t]he Defendant wants the Second Circuit to apply the existing standard differently." *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2017 WL 59085, at *5 (E.D.N.Y. Jan. 4, 2017).

*Berger*, 2006 WL 2570915, at *3 (citing *Schweizer*, 136 F.3d at 237-38).  Because the standard

is objective, the existence of an expert report and deposition testimony in the record does not

change the Court's approach.  *Vega*, 2005 WL 711657, at *9 (E.D.N.Y. Mar. 29, 2005) ("[H]ow

the least sophisticated consumer would interpret the defendant's form debt collection letter can

be determined without the aid of expert testimony at trial.").  Moreover, as noted, even if the

Court were to consider the substance of Dr. Perlman's report and testimony, that information

does nothing to create a genuine issue of fact.

On the flipside of the same coin, the Court will not apply the least sophisticate consumer

standard in a novel manner -- subjectively, as Defendant appears to request -- simply because the

record contains an expert report and expert testimony.  It is axiomatic that the least sophisticated

is "an objective standard, designed to protect all consumers, 'the gullible as well as the shrewd.'"

*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quoting *Jacobson*, 516

F.3d at 90).  In applying the standard, the Court must "bear in mind the [FDCPA's] 'dual

purpose':  in addition to protecting consumers against deceptive debt collection practices, the

objective test we apply protects debt collectors from unreasonable constructions of their

communications." *Jacobson*, 516 F.3d at 90 (citing *Clomon*, 988 F.2d at 1320).

Defendant's argument -- that the Court should look beyond the objective terms of the

letter to Plaintiff's actual circumstances -- is flawed in that it does not take into account a critical

aspect of the FDCPA's purpose:  the Second Circuit has adopted an objective approach in order

to effectuate the FDCPA's purpose precisely *because* every collection letter is based on

circumstances that are fact-specific to the alleged debtor.  *See Jacobson*, 516 F.3d at 91 ("In

order to prevail [under the FDCPA], it is not necessary for a plaintiff to show that she herself

was confused by the communication she received; it is sufficient for a plaintiff to demonstrate

that the least sophisticated consumer would be confused.  In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as 'private attorneys general' to aid their less sophisticated counterparts . . . ."); *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) ("By its very nature . . . the least sophisticated consumer test pays no attention to the circumstances of the particular debtor in question, and it was error for the district court to rely on such circumstances here.").[11]

   Based on the case law in this Circuit, the Court declines to adopt Defendant's argument that anything other than the objective least sophisticated consumer standard should apply to the review of Defendant's collection letter.

## B.     The FDCPA

Pursuant to 15 U.S.C. § 1692g(a),

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

---

[11]   The "circumstances" at issue in *Easterling* concerned the background, financial circumstances, and sophistication of the plaintiff-debtor, and not what the hypothetical least sophisticated consumer would know about the context of the ongoing dispute leading to the assertion of the debt.  In *DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F. App'x 7, 10 (2d Cir. 2015), the Second Circuit raised without definitively answering the question of whether the language of *Easterling* extends to this other class of "circumstances," concluding that "[w]e are not certain the language in *Easterling* reaches so far."

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Similarly, under the terms of 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." "A communication is considered false, deceptive, or misleading to the 'least sophisticated consumer' if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *White v. Prof'l Claims Bureau, Inc.*, 284 F. Supp. 3d 351, 361 (E.D.N.Y. 2018) (quoting *Easterling*, 692 F.3d at 233).  Courts in the Second Circuit have held that a failure to identify a creditor in violation of § 1692g(a)(2) is also a false, deceptive, or misleading representation for purposes of § 1692e." *McGinty v. Professional Claims Bureau, Inc.*, 2:15-CV-4356 (SJF) (ARL) (E.D.N.Y. Jan. 2, 2018) at 17.

### C.    Recent FDCPA Decisions

As indicated by both parties' attempts to submit "supplemental authority" following the filing of the cross-motions for summary judgment, there have been several recent decisions in this Circuit, and this district specifically, which speak to certain characteristics of the collection letter at issue here.  The Court briefly addresses these decisions here.

In *McGinty v. Professional Claims Bureau, Inc.*, issued January 2, 2018, Judge Feuerstein ruled on summary judgment that several collection letters violated the FDCPA.  *See generally McGinty*, 2:15-CV-4356 (SJF) (ARL) (E.D.N.Y. Jan. 2, 2018).  The collection letters at issue in

*McGinty* were nearly identical to Defendant's letter here.  Specifically, each letter contained only a "single reference, in the top, right-hand corner, to an entity for which, other than the preceding 'Re:', there are no identifiers associated therewith, *e.g.*, 'creditor,' 'current creditor,' 'original creditor,' or 'creditor to whom this debt is ow[e]d.'" *Id.* at 15.  The Court distinguished the letters under review from others cited by the defendant which contained at least two references to the creditor to whom payments were due.  *Id*. at 16.  In the absence of an explicit reference to a "creditor," and without more than one reference to the creditor entity or any other information identifying the relationship between the creditor and the debt collector, Judge Feuerstein found that the letters "fail[ed] to implicitly or explicitly identify the creditor to whom the subject debts are owed clearly enough that the least sophisticated consumer would be likely to understand." *Id*.  Accordingly, Judge Feuerstein determined that the letters violated Section 1692g(a)(2).  *Id*.

    In *Goldstein v. Diversified Adjustment Service, Inc.*, issued November 20, 2017, Judge Cogan granted the defendant's motion for judgment on the pleadings, finding a collection letter did not violate Section 1692g(a)(2).  Although the collection letter at issue did not explicitly identify "Sprint" as the creditor, the letter mentioned Sprint *seven times*, and several portions of the letter implicitly identified Sprint as the creditor, most notably where "the letter tells plaintiff that defendant will notify Sprint when it receives her payment."  *Goldstein v. Diversified Adjustment Serv., Inc.*, No. 17-CV-04729, 2017 WL 5592683, at *3 (E.D.N.Y. Nov. 20, 2017). What's more, Judge Cogan went out of his way to distinguish the letter at issue from an those at issue in *McGinty*, as well as with Defendant's letter in the instant case as discussed by Judge Spatt in his decision on Defendant's motion to dismiss.  Judge Cogan observed that Defendant's letter in the instant action, along with the letters in *McGinty*, "were materially different from the one at issue here.  The disputed letter in *Datiz* contained *a single* reference to the creditor (as

against seven, here), a point that the *Datiz* court emphasized . . . . The disputed letters in *McGinty* also contained only a single reference on the subject line to the creditor.  In neither case do the letters mention the name of the creditor *anywhere* beyond the subject line."  *Id*. (emphasis in original).

In *Diaz v. Professional Claims Bureau, Inc.*, issued a week after *Goldstein*, Judge Spatt ruled on summary judgment that a collection letter containing only a single reference to the plaintiff's creditor, "on the subject line on the top right corner of the page, which reads, 'Re: NSLIJ HEALTH SYS-SOUTHSIDE' and an opaque reference to [the defendant's] 'client,'" violated Section 1692g(a)(2).  *Diaz v. Professional Claims Bureau, Inc.*, 2:16-CV-2184 (ADS) (SIL) (E.D.N.Y. Nov. 27, 2017), at 14.  Significantly, *Diaz* references the decision on Defendant's motion to dismiss in this case as well as the *McGinty* decision on defendant's motion for judgment on the pleadings.  *Id*. ("The Court notes that although *Datiz* came before this court as a motion to dismiss under Rule 12(b)(6), the similarity of the collection letters at issue convinces this Court that its reasoning applies equally in the current procedural posture. . . . [I]n *McGinty v. Prof'l Claims Bureau, Inc.*, Judge Feurstein [*sic*] held that nearly identical collection letters to the Diaz Collection Letter were insufficient to satisfy the least sophisticated consumer standard.").

In *White v. Professional Claims Bureau*, issued February 22, 2018, Judge Bianco found for the plaintiff on summary judgment.  *See generally White v. Prof'l Claims Bureau, Inc.*, 284 F. Supp. 3d 351, 360 (E.D.N.Y. 2018).  In *White*, the defendant's collection letter again contained only a single reference to the creditor-medical institution, at the top right-hand corner of the letter, following "Re:", and, despite referencing the institution as the defendant's "client," failed to explicitly identify who owned the plaintiff's debt.  Judge Bianco relied on both Judge Spatt's

reasoning in *Diaz* as well as Judge Feuerstein's reasoning in *McGinty*: "the form letters in the instant cases are identical to the letters discussed in *Diaz* and *McGinty*, and are also, therefore, deficient in the ways identified by the courts ruling in those cases." *White*, 284 F. Supp. 3d at 360. In concluding his analysis under Section 1692g(a)(2), Judge Bianco stated the following:

> [v]iewing the same set of relevant facts as were present in *McGinty* and *Diaz*, this Court finds the analysis in those decisions to be persuasive. Here, based on the language in defendant's letters alone, this Court finds that it would be *at best* unclear to the "least sophisticated consumer" which entity owned plaintiffs' debts. In fact, the Court believes it is equally, if not more likely, that recipients would read these collection notices to suggest that the creditor they would be paying was defendant [-debt collector].

*Id.* at 363 (emphasis in original).

There are two more recent FDCPA decisions worth mentioning, *DeLeon v. Action Collection Agency of Boston*, No. 17-CV-8899, 2018 WL 2089343 (S.D.N.Y. May 3, 2018), and *Schlesinger v. Jzanus Ltd.*, No. 17-CV-3648, 2018 WL 2376302 (E.D.N.Y. May 24, 2018). In *DeLeon*, Judge Abrams granted a defendant's motion for summary judgment where

> [t]he Letter not only refers to the creditor, but does so in a manner that identifies the relationship between the debt collector, ACA Boston, and the creditor. The first line of the body of the Letter states: "The above-named creditor has referred your account to us." Dkt. 9, Ex. C. The name of the creditor appears just above that, in the subject line of the Letter, which reads: "Re: GPDDC LLC." *Id.* The letter also instructs the recipient to make the check payable to "the creditor and send it to our office," making clear that the creditor and the sender are distinct. *Id.* The Letter ends by clarifying that "[t]his communication is from a third party debt collector." *Id.* The Letter thus adequately conveys that it was written by a debt collector on behalf of a creditor, namely GPDDC, LLC, and thus satisfies § 1692g(a)(2).

*DeLeon*, 2018 WL 2089343, at *3. The court then distinguished the letter under review with Defendant's letter in the instant action as discussed by Judge Spatt in his decision on

Defendant's motion to dismiss, as well as with the nearly-identical letters examined by Judge

Feuerstein in *McGinty*.  *See id.*

      Similarly, in *Schlesinger,* Judge Cogan granted the defendant's motion to dismiss, ruling

that several collection letters did not violate Section 1692g(a)(2).  The letters at issue did not

explicitly identify the creditor to whom the plaintiff owed a debt, but rather listed the creditor-

medical institutions as "clients" of the defendant and contained multiple references to each

creditor-medical institution.  *Schlesinger*, 2018 WL 2376302, at *2.  Moreover, "the letters' body

informed the debtors that '[y]our account has been placed with us for collection or debt

resolution' and directs the debtors to 'please make your check or money order payable to' the

relevant medical provider.  Given the rest of the letter, the allegedly missing step—an express

statement that the account in the subject line is owed to the 'client'—is unnecessary."  *Id*. at 3.

The court distinguished these letters from those examined by Judge Feuerstein in *McGinty*:  "the

*McGinty* letters only identified the creditor as 'Re: [creditor name],' not as the debt collector's

'client,' and did not instruct the debtor to make payments directly to the creditor.  Furthermore . .

. the *McGinty* letters only mentioned the creditor's name in the subject line."  *Id*.

    **D.**       **Defendant's Collection Letter**

      Applying the reasoning of these decisions to the instant circumstances, the Court

determines it would be unclear to the least sophisticated consumer from Defendant's letter

exactly who currently owns Plaintiff's debt and to whom that debt must be paid -- the debt

collector-Defendant or the medical institution.  There are several characteristics of Defendant's

letter that lead the Court to this conclusion.  First, there is only a single reference to the creditor-

medical institution, John T. Mather Hospital, in Defendant's letter.  This reference is not

accompanied by any qualifier Plaintiff could use to draw inferences regarding the nature of the

relationship between that entity and the party sending the letter.  Rather, the creditor-medical institution's name follows "Re:", without any other information.  If there is one thing that is clear from the above-examined cases, it is this:  a collection letter violates Section 1692g(a)(2) where it contains only a single reference to the name of a creditor without explicit identification of that entity as the creditor to whom a debt is due and where it lacks contextual information which would for implicit identification of the creditor as the owner of the debt.

As to contextual information, Defendant's letter does not instruct Plaintiff to direct payment to the creditor-medical institution.  This piece of information was key to the determinations in *DeLeon* and *Schlesinger* that the letters in those cases did not violate Section 1692g(a)(2), notwithstanding the fact that they did not explicitly identify the creditor as the entity to whom the debt is owed.  Moreover, Defendant's letter does not identify the creditor as a "client" of the Defendant.  Although not likely sufficient on its own to satisfy Section 1692g(a)(2), *see Diaz* at 14; *White*, 284 F. Supp. 3d at 355, such a reference is an example of the type of contextual references some combination of which are necessary and sometimes sufficient to bring otherwise deficient collection letters into compliance with Section 1692g(a)(2).

In viewing Defendant's letter from the perspective of the least sophisticated consumer, the Court finds that the letter fails to either explicitly or implicitly set forth "the name of the creditor to whom the debt is owed."  Accordingly, the Court concludes that Defendant's collection letter violates Section 1692g(a)(2) of the FDCPA as a matter of law.

In addition, because it would not be clear to the least sophisticated consumer who currently owns Plaintiff's debt and to whom that debt is to be paid -- Defendant or the medical institution -- the Court also finds that Defendant's letter is "open to more than one reasonable interpretation as to the owner of the debt."  *White*, 284 F. Supp. 3d at 363.  Consequently, the

letter violates Section 1692e as a matter of law.  *See McGinty* at 16-17 ("Courts in the Second

Circuit have held that a failure to identify a creditor in violation of § 1692g(a)(2) is also a false,

deceptive, or misleading representation for purposes of § 1692e."); *Eun Joo Lee v. Forster &*

*Garbus LLP*, 926 F. Supp. 2d 482, 487 (E.D.N.Y. 2013) ("[F]ailure to identify the creditor also

could have been unfair and deceptive to the least sophisticated consumer for purposes of Section

1692e").

It is worth briefly addressing Defendant's argument that Judge Spatt's "August 4, 2016

Memorandum of Decision and Order has little value to the Plaintiff in her attempt to establish

that the 'failure to name the creditor' claim constitutes an FDCPA violation as a matter of law."

Def.'s Opp'n. at 7.  The Court respectfully disagrees.  Rather, Judge Spatt's reasoning is

persuasive and consistent with the several recent FDCPA decisions discussed above.  Moreover,

while the Court's conclusion is based on the legal principles enunciated in these several recent

decisions, reaching the same legal conclusion as Judge Spatt in his previous decision is, in the

absence of changed factual circumstances, wholly appropriate under the "law of the case"

doctrine.  *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("[T]he [law of the case] doctrine

posits that when a court decides upon a rule of law, that decision should continue to govern the

same issues in subsequent stages in the same case.").

Defendant's related argument that decisions on motions to dismiss or motions for

judgment on the pleadings "are not very relevant to the higher summary judgment burden

standard," Def.'s Reply at 8, is similarly flawed.  While the standard of review on a motion for

summary judgment is clearly different from the standard of review on a motion to dismiss or

motion for judgment on the pleadings, where a court is examining a collection letter for

compliance with Section 1692g(a)(2) and the terms of the letter are not in dispute, the question

presented to the court is a question of law.  The Court's decision on such a question is guided by

application of the objective least sophisticated consumer standard.  Application of this standard

is not fact specific beyond the content of the collection letter and will generally yield the same

legal determination, regardless of the nature of the motion under consideration.  Indeed, the

courts in *Diaz*, *White*, and *DeLeon* decided motions for summary judgment with references to

decisions on motions to dismiss or motions for judgment on the pleadings, including Judge

Spatt's prior decision in the instant action.

Defendant argues that *Macelus v. Capital Collection Service*, No. CV 17-2025, 2017 WL

5157389 (D.N.J. Nov. 7, 2017) should guide the Court's determination of the instant motions.  In

*Macelus*, the court briefly discussed Judge Spatt's prior decision in this case, as well as Judge

Feuerstein's decision on the motion for judgment on the pleadings in *McGinty*.  The court stated

the following:  "[w]e are at pains to understand how even the 'least sophisticated' of

consumers—consumers definitionally being persons who pay  bills (i.e. 'consume') at least

occasionally—would fail to identify that a bill was being collected on by the *Datiz* or *McGinty*

letters and that that bill related to the creditor identified by 're.'"  *Macelus*, 2017 WL 5157389, at

\*3.  However, as the court in *Macelus* recognized, the letter under review differed from letters in

this case and *McGinty*.  *Id.*  In the very next sentence, the court stated that Judge Spatt's decision

"is of no moment here, for we need not decide the meaning of 're.'  We are asked instead to

decide on whether 'Account for' is language that sufficiently conveys, to the least sophisticated

consumer, notice of a creditor seeking recovery of a debt."  *Id*.

The Court does not find the *Macelus* decision persuasive here.  In addition to the fact that

it is from another jurisdiction, the decision addresses a collection letter that is notably different

from Defendant's letter here.  Indeed, the court in *Macelus* recognized this difference and limited

its comments regarding the letters in this case and *McGinty* to *dictum*.  For these reasons, the Court declines to adopt the reasoning of the *Macelus* decision, and is instead guided by the Second Circuit FDCPA precedents discussed above.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Spatt that Defendant's motion for summary judgment be DENIED and that Plaintiff's motion for summary judgment be GRANTED, in accordance with this Report and Recommendation.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


                                                        **SO ORDERED.**

Dated: Central Islip, New York
           July 27, 2018

                                                        /s/ A. Kathleen Tomlinson
                                                        A. KATHLEEN TOMLINSON
                                                        U.S. Magistrate Judge