**FILED**
**CLERK**

1:47 pm, Apr 29, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
LISA DATIZ,

                   Plaintiff,

        -against-

INTERNATIONAL RECOVERY
ASSOCIATES, INC.

                  Defendant.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:15-cv-03549 (ADS)(AKT)

**APPEARANCES:**

**Sanders Law, PLLC**
*Counsel for the Plaintiff*
100 Garden City Plaza, Suite 500
Garden City, NY 11530
      By:    Craig B. Sanders, Esq.
             David M. Barshay, Esq., Of Counsel.

**Robert L. Arleo, Esq.**
*Counsel for the Defendant*
380 Lexington Avenue 17th Floor
New York, NY 10168

**SPATT, District Judge**:

Plaintiff Lisa Datiz (the "Plaintiff") brought the instant action alleging that defendant International Recover Associates (the "Defendant") violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

On September 24, 2008, the Court granted the Plaintiff's motion for summary judgment and awarded the Plaintiff $1,000 in statutory damages, which triggered a cascade of motions by the parties.

Presently before the Court is: (1) a motion by the Defendant to reconsider, pursuant to Local Civil Rule 6.3, the amount of statutory damages awarded; (2) a motion by the Defendant to

1

disqualify the undersigned pursuant to 28 U.S.C. § 455; and (3) a motion by the Plaintiff for sanctions pursuant to 28 U.S.C. § 1927.

For the reasons explained below, the Court grants the Defendant's motion to reconsider, denies the Defendant's motion to disqualify, and denies the Plaintiff's motion for sanctions.

## I. BACKGROUND

On June 17, 2015, the Plaintiff commenced this action with the filing of the Complaint. The case proceeded as normal until August 4, 2016, when the Court issued an order granting in part, and denying in part, the Defendant's motion to dismiss. In the Order, the Court granted the motion as to the "illegal fee" claims (the first and second causes of action) but denied the motion as to the "name of the creditor' claims (the third and fourth causes of action).

On August 16, 2016, the Defendant filed a motion seeking a Certificate of Appealability of regarding the denial of dismissal of the "name of the creditor" claims. While the Defendant's motion was pending, the Defendant filed a separate motion seeking to "Vacate that portion of the Memorandum of Decision and Order denying the Defendant's motion to dismiss that portion of the Amended Complaint which alleges an FDCPA violation for the alleged failure to name a creditor in a collection letter."

On January 4, 2017, the Court denied both motions. In doing so, the Court opined that: "Rather than litigate the merits of the case, the Defendant has sought to use any procedural vehicle under the sun to create protracted and expensive litigation."

On January 6, 2017, the Defendant filed a Letter Motion "to Amend/Correct/Supplement Memorandum of Decision and Order issued on January 5, 2017" which sought, in sum, to strike the foregoing language from the order. The Court denied the Defendant's motion without prejudice with leave to refile it as a formal motion.

On February 8, 2017, the Defendant filed a letter motion seeking a hearing regarding "Plaintiff's attempt to breach an alleged agreement to proceed to trial by jury," claiming that the Plaintiff should be compelled to forego summary judgment based on a supposed agreement made during an August 15, 2016 conference before Judge Tomlinson. Judge Tomlinson denied the motion to compel because no stipulation had been entered under which Plaintiff purportedly waived her right to move for summary judgment.

On July 12, 2017, the Defendant filed a letter motion seeking to compel production of the executed deposition transcript of Plaintiff's expert. Judge Tomlinson denied this request finding, *inter alia*, that "Defendant's counsel has not cited any statutory authority or case law supporting the position he takes or the relief he requests."

On July 31, 2017, the Court held a pre-motion conference regarding the parties' proposed motions for summary judgment. The Court notes that the Defendant opposed the Plaintiff's request to file a motion for summary judgment in a letter on July 18, 2017, despite itself seeking a pre-motion conference for the purpose of filing a summary judgment motion on July 11, 2017. After the conference, the Court issued an order indicating that settlement was not reached, and a briefing schedule had been set for the competing motions for summary judgment.

On September 12, 2017, the parties cross-moved for summary judgment. While the motions were pending, the parties filed notices of supplemental authority. The Court directed the parties to cease submitting these notices.

On March 28, 2018, the Court referred the summary judgment motions to Judge Tomlinson for a report and recommendation.

On April 3, 2018, the Defendant filed a letter motion asking for leave to file a sur-reply in connection with the then-pending motions for summary judgment. Before obtaining such leave,

the Defendant filed a "Letter Supplement." On April 16, 2018, Judge Tomlinson denied the Defendant's request.

On June 28, 2018, the parties appeared for oral argument before Judge Tomlinson and, thereafter, Judge Tomlinson issued an Order reserving decision on the motions.

On July 9, 2018, the Defendant filed a letter captioned "Letter request to confirm judicial merits opinion statements made at summary judgment pre-motion conference." In this letter, Defendant's counsel states that it was his recollection that "Your Honor adamantly stated that neither party would obtain summary judgment and that Your Honor, if serving on a jury, would know the name of the creditor in the Defendant's collection letter." To this end, Defendant's counsel asked the Court to "advise if any of the law clerks present at the summary judgment pre-motion conference took notes of the conference" which would serve to confirm counsel's recollection.

On July 12, 2018, the Defendant filed a letter addressed to Judge Tomlinson to advise her that the Defendant would not be providing the Court with any further authority on the summary judgment motions, as had been previously requested. Thereafter, on July 16, 2018, Judge Tomlinson acknowledged Defendant's request, which had been "reluctantly granted" to begin with, and admonished counsel that "this was not the first instance" of counsel failing to follow the Court's rules.

On July 27, 2018, Judge Tomlinson issued a report and recommendation that Defendant's motion for summary judgment be denied and that Plaintiff's cross-motion for similar relief be granted.

On July 31, 2018, the Court issued an order denying the Plaintiff's July 9, 2018 letter motion, in which it stated: "[t]he Court has never heard of such a request. In essence, a private

litigant is asking the Court to turn over its own internal documents. The Court will not disclose whether or not its law clerks took notes during a conference. If they did, they are solely for the Court's own purposes, and not to be turned over to litigants for their ends. To say that the Court is surprised by this unusual request is an understatement."

On August 10, 2018, the Defendant filed an objection to Judge Tomlinson's report and recommendation.

On August 20, 2018, before the Court resolved the Defendant's objections, the Defendant submitted a letter to Chief Judge Irizarry asking her to reassign this case. The basis for this request was that the "any procedural vehicle under the sun" statement set forth in the January 4, 2017 order was "patently unjustified" and, therefore, showed animus or prejudice against the Defendant and/or its counsel.

On September 24, 2018, the Court adopted the report and recommendation. In doing so, the Court awarded the Plaintiff $1,000 in statutory damages and granted Plaintiff leave to file a motion for attorneys' fees and costs within 30 days of the order.

On October 5, 2018, the Defendant filed a motion for reconsideration of the order's award of $1,000 in statutory damages, arguing that such an award showed the Court's "blatant disregard" of the governing law.

On October 6, 2018, the Defendant wrote a second letter to Judge Irizarry asking her to reassign the case. The basis for counsel's second request restated the position espoused in the motion to reconsider, namely that the statutory damages award was a "blatant disregard of legal mandate."

On November 1, 2018, the Defendant filed a motion to disqualify the undersigned from this case due to the Court's perceived animus toward the Defendant and/or it's counsel. In essence,

the Defendant believes that the undersigned cannot fairly and impartially adjudicate the claims against it, as evidenced by the "under the sun" statement in the January 4, 2017 Order; the Court's admonishment in the July 31, 2018 order; and the supposedly "unjustified" award of $1,000 in statutory damages in the September 24, 2018 summary judgment order.

## II. DISCUSSION

### A. AS TO THE DEFENDANT'S MOTION TO RECONSIDER.

Local Civil Rule 6.3 permits a party to move for reconsideration of a court order within 14 days after the entry of the Court's determination of the original motion. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). Of importance, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Reconsideration "is considered an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Butto v. Collecto* Inc., 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012) (Spatt, J.); *Diaz v. Bellnier*, 974 F. Supp. 2d 136, 139 (E.D.N.Y. 2013). "Ultimately, however, the decision on a motion for reconsideration is committed to the sound discretion of the district court." *Gupta v. Attorney General of U.S.*, 52 F. Supp. 3d 677, 679 (S.D.N.Y. 2014); *Butto*, 845 F. Supp. 2d at 494.

As to the merits of the Defendant's motion, the FDCPA sets statutory damages at a maximum of $1,000 for an individual plaintiff, 15 U.S.C. § 1692k(a)(2)(A). Both "[t]he decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court." *Nero v. Law Office of Sam Streeter P.L .L. C.*, 655 F.Supp.2d 200, 210 (E.D.N.Y.2009) (citation omitted). In exercising their discretion, courts "must consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any additional damages awarded." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir.1998) (internal quotation and citations omitted).

Here, the Court awarded the Plaintiff the maximum statutory damages of $1,000. However, the Defendant has drawn the Court's attention to a number of relevant cases that it overlooked. These cases articulate that "[w]here a defendant's violations are not particularly egregious, courts have held that a $500 statutory award is appropriate." *Abrahmov v. Fid. Info. Corp.*, No. 12-cv-03453, 2013 WL 5352473, at *4 (E.D.N.Y. Sept. 23, 2013) (collecting cases); *see also Weiss v. Zwicker & Assocs.*, P.C., 664 F. Supp. 2d 214, 218 (E.D.N.Y. 2009) (Spatt, J.) (awarding $500 in statutory damages where there was "no pattern of noncompliance," "no evidence that the violation was intentional," "the letter was not threatening in tone and the Plaintiff suffered no actual damages"). Conversely, "[a]wards of the statutory maximum are typically granted in cases where the defendants' violations are egregious." *Dona v. Midland Credit Mgmt., Inc.*, No. 10-cv-0825, 2011 WL 941204, at *3 (E.D.N.Y. Feb. 10, 2011) (collecting cases), *report and recommendation adopted*, 2011 WL 939724 (E.D.N.Y. Mar. 15, 2011).

In light of this authority, the Court finds its award of maximum statutory damages to be excessive. The Court awarded summary judgment based on a singular technical violation of the

FDCPA, not a pattern of egregious, intentional, or harmful misconduct. As a result, the Court views a $500 statutory award more appropriate for the claims at issue.

Therefore, the Court grants the Defendant's motion to reconsider.

**B. AS TO THE DEFENDANT'S MOTION TO DISQUALIFY.**

The law requires that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In this regard, a judge must recuse himself under 28 U.S.C. § 455(a) if "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *Diamondstone v. Macaluso*, 148 F.3d 113, 121 (2d Cir.1998) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992) (citations omitted)); *see also United States v. Barreras*, 494 F. App'x 115, 118 (2d Cir. 2012) ("We assess whether a judge must recuse himself under 28 U.S.C. § 455(a) by asking whether 'a reasonable person, knowing all of the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned.'").

"Recusal motions are committed to the court's sound discretion." *Wright v. C.I.R.*, 571 F.3d 215, 220 (2d Cir. 2009). The judge asked to disqualify him or herself "is enjoined to 'weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.'" *United States v. Anson*, 04-cr-6180, 2007 WL 119151, at *6 (W.D.N.Y. Jan. 10, 2007) (quoting *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988)). "Litigants are entitled to an unbiased judge, not to a judge of their choosing." *Id.*

"Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's

impartiality." *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009). In that regard, the Supreme Court has found matters relating to judicial bias to impinge upon a party's right to a fair trial in only extreme circumstances generally involving the clear appearance of a conflict of interest and a high probability of actual bias on the part of the judge in question. *See, e.g.*, *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872, 129 S.Ct. 2252, 2256, 173 L.Ed.2d 1208 (2009) (finding that the Due Process clause was violated in a civil case where one of the judges on the West Virginia Court of Appeals voted to reverse a $50 million jury verdict against a defendant-corporation after he received "campaign contributions in an extraordinary amount" from the defendant's principal officer a short time before voting to reverse the verdict); *Mayberry v. Pennsylvania*, 400 U.S. 455, 466, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (holding that Due Process requires that a defendant in a criminal contempt proceeding be tried before a judge other than the judge who had determined in an earlier proceeding that contempt charges should be brought against the defendant because of the high potential for bias against the defendant); *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (finding that the Due Process clause required a mayor-judge to recuse himself from a criminal case in which he had a "direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendant] in his case").

Significantly, opinions formed by a judge on the basis of events occurring during the litigation "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Accordingly, litigants cannot obtain a new judge merely based on "expressions of impatience, dissatisfaction, annoyance, and even anger,

that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555–56, 114 S.Ct. 1147.

In this case, the Defendant's counsel, Robert L. Arleo ("Mr. Arleo"), accuses the Court of hostility and partiality based on a collection of remarks made to him over the course of the case, as well as the Court's now remedied adverse ruling on the amount of statutory damages. After reviewing the record, the Court sees nothing in its comments that go beyond the kind of garden-variety admonishment typically issued by courts to intransigent litigants. The Court will not litigate the validity of those comments with Mr. Arleo. It suffices to note that they are mild in comparison to the sort of egregious behavior typically required for a judge's mid-litigation conduct to warrant recusal. *See, e.g.*, *United States v. Padilla*, 186 F.3d 136, 142 (2d Cir. 1999) (rejecting the defendant's statement of contrition during sentencing, stating: "[H]ow about the families of the people whose lives you've ruined? You don't care about them"); *In re United States*, 614 F.3d 661, 665 (7th Cir. 2010) (accusing government lawyers repeatedly of lying, saying: "I don't believe you when you say just about anything anymore because I know that you will lie to a court any time it helps you. I know that. I saw you do it").

The primary statement at issue – that "the Defendant has sought to use any procedural vehicle under the sun" – at most constitutes an inoffensive expression of dissatisfaction regarding Mr. Arleo's excessive motion practice. The idiom "under the sun" is a common turn of phrase used to emphasize a large number. Its usage fills the federal reporters. *See, e.g.*, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537–38, 202 L. Ed. 2d 536 (2019) ("The parties' private agreement may be crystal clear and require arbitration of every question under the sun . . . ."); *Abramski v. United States*, 573 U.S. 169, 197 n.2., 134 S. Ct. 2259, 2277, 189 L. Ed. 2d 262 (2014) (Scalia, J., dissenting) ("But whether the item sold is a carton of milk, an iPhone, or anything else under the

sun . . . ."); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125, 127 S. Ct. 764, 770, 166 L. Ed. 2d 604 (2007) ("This would be true only if the license required royalties on all products under the sun, and not just those that practice the patent."); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 148, 122 S. Ct. 593, 607, 151 L. Ed. 2d 508 (2001) ("Congress intended statutory subject matter to 'include anything under the sun that is made by man."); *United States v. Virginia*, 518 U.S. 515, 567, 116 S. Ct. 2264, 2292, 135 L. Ed. 2d 735 (1996) (Scalia, J., dissenting) ("I shall devote most of my analysis to evaluating the Court's opinion on the basis of our current equal protection jurisprudence, which regards this Court as free to evaluate everything under the sun."); *Lockett v. Ohio*, 438 U.S. 586, 631, 98 S. Ct. 2954, 2975, 57 L. Ed. 2d 973 (1978) (Rehnquist, J., concurring) ("By encouraging defendants in capital cases, and presumably sentencing judges and juries, to take into consideration anything under the sun as a 'mitigating circumstance,' it will not guide sentencing discretion but will totally unleash it."); *Dennis v. United States*, 341 U.S. 494, 572, 71 S. Ct. 857, 899, 95 L. Ed. 1137 (1951) (Jackson, J., concurring) ("With due respect to my colleagues, they seem to me to discuss anything under the sun except the law of conspiracy."); *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) ("[T]he common use of such stock .... merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun."); *Stewart v. Lee*, No. 09-cv-4374, 2014 WL 3014608, at *7 (E.D.N.Y. July 3, 2014) ("There is, moreover, little new under the sun."); *Morales v. New York*, No. 05-cv-5006, 2010 WL 11623479, at *14 n.15 (E.D.N.Y. Aug. 31, 2010) ("Plaintiff's complaint recites boilerplate allegations that defendants deprived her of nearly every constitutional right under the Sun."); *IGY Ocean Bay Properties, Ltd. v. Ocean Bay Properties I Ltd.*, 534 F. Supp. 2d 446, 447 (S.D.N.Y. 2008) ("One of the marvels of the common law is how often it disproves the old adage that there is nothing new under the sun."); *In re Residential Capital, LLC*, 571 B.R. 581,

586 (Bankr. S.D.N.Y. 2017) ("The previous vexatious, extraneous, and improper conduct engaged in by Goyens over many years illuminates to all that this filing is nothing new under the sun.").

Perhaps recognizing as much, Mr. Arleo admits that "standing alone, the 'under the sun" admonishment did not provide a basis for the Defendant to seek disqualification of" the undersigned. ECF 103-1 at 10. Instead, he claims that "clear evidence of severe bias" exists when viewing the reprimand in conjunction with: (1) the "hostile and angry response" to his motion requesting the Court turn over the notes of its law clerk and (2) the Court's award of the maximum allowable statutory damages. *Id.* Neither document reflects such hostility. In its response to his motion, the Court merely referred to the relief requested as unheard of and superfluous, descriptions which Mr. Arleo has yet to disabuse the Court of their accuracy. As for the statutory damages award, the Court already explained that it overlooked relevant case law and remedied any potential prejudice to the Defendant by granting its motion to reconsider.

The Court assures Mr. Arleo that its sole motivation in doing so was to render a good faith and impartial determination of the issue before it, rather than any hostility to Mr. Arleo or his client. The undersigned took an oath to administer justice without respect to persons and to faithfully and impartially discharge the duties of this office. The Court has no personal relationships with either party or attorney and has presided over numerous cases involving Mr. Arleo. Indeed, the Court has previously made favorable remarks regarding Mr. Arleo. *See, e.g.*, *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 457 (E.D.N.Y. 1996) (Spatt, J.) (finding that Mr. Arleo would "clearly" serve as an adequate representative of a putative class).

Given the relative benign nature of the comments at issue and the *de minimis* amount of the statutory damages award, it is astonishing that Mr. Arleo would make such serious accusations about the undersigned on these facts alone. In essence, Mr. Arleo has attacked the very integrity

of the undersigned, claiming that the Court was primarily driven by vindictiveness and wrath as opposed to the duties of this office. *See See* ECF 103-1 at 9 (alleging that the Court's comments "demonstrate[] a deep-seated antagonism toward the Defendant and, by extension, the undersigned attorney, of a kind that a fair-minded person could not set aside"), *id.* ("Judge Spatt's impartiality is now subject to serious questioning"), 10 ("Judge Spatt's unjustifiably angry and hostile statements . . . indicate a personal bias and prejudice against the Defendant and its undersigned attorney"), *id.* ("This bias and hostility was clearly behind baselessly awarding the Plaintiff the full $1,000 in FDCPA statutory damages."), *id.* ("Judge Spatt was sending a clear message that he intends to further baselessly monetarily punish the Defendant in regard to Plaintiff's forthcoming motion for attorneys fees and costs."), 11 (alleging that the Court's decision "simply demonstrates that Judge Spatt is ready to lower the boom on the Defendant in conjunction with the Plaintiff's forthcoming motion for attorneys fees and costs"), 12 ("The reason Judge Spatt failed to require the herein Plaintiff to make any showing in regard to the issues of FDCPA statutory damages, and awarded the maximum $1,000 to the Plaintiff without considering a required check list, is due to his anger and hostility toward the herein Defendant."). The Court cannot fathom why Mr. Arleo would take such drastic steps over such a minute statutory damages award.

Based on his papers, the Court suspects Mr. Arleo decided to use this motion as leverage to obtain a more favorable ruling on the Plaintiff's motion for attorney's fees. *See* ECF 101-3 at 13 ("His ignorance of these mandated factors was based solely upon his hostility towards the Defendant. Thus, Judge Spatt simply cannot be trusted to abide by his responsibility to use a conscientious and detailed inquiry into the validity of representations by Plaintiff's attorneys that a certain number of hours were reasonably and usefully expended[.]"), 13–14 ("Plaintiff's counsels are well aware that Judge Spatt is hostile to the Defendant and they expect that he will ultimately

award whatever fees and costs the Plaintiff demands."). While Mr. Arleo's strategy is a galling

misuse of § 455(a), it is unsurprising in light of his behavior in other cases, where he similarly

sought the recusal of the presiding judge as part of failed attempts to obtain a favorable ruling. *See*

*Ohlson v. Cadle Co.*, No. 04-cv-3418, 2009 WL 5167651 (E.D.N.Y. Dec. 18, 2009) (denying

motion to disqualify Judge Hurley for written comments in orders made over the course of

litigation); *Thomasson v. GC Servs. Ltd. P'ship*, No. 05-cv-0940, 2007 WL 2317111 (S.D. Cal.

Aug. 9, 2007) (denying motion to disqualify Judge Burns based on comments in summary

judgment order).

It is particularly noteworthy that the judges in those cases excoriated Mr. Arleo about the

inappropriateness of his behavior:

> Plaintiffs want the opportunity to argue open-endedly that "manifest injustice to
> Plaintiffs" resulted from the "irregularities" of the "proceedings conducted before
> this Court." The intemperate content of the Arleo Declaration foreshadows and
> provides the court with considerable insight into the likely content of the filings it
> might expect were leave to file Motions For Reconsideration granted. He expounds
> at length, among other things, his opinion of this court's purported incompetence,
> further obfuscating any argument on the merits. For example, Mr. Arleo
> disrespectfully excoriates the court's reasoning, results, and process. He repeatedly,
> most vehemently, and quite mistakenly accuses this court of bias and prejudice
> against his clients, as well as judicial misconduct in the manner of its rulings,
> blatant and intentional misapplication of legal standards, and the like.
>
> . . .
>
> Robert L. Arleo, Esq., a New York attorney, was granted *pro hac vice* status to
> represent plaintiffs in this action. He has exhibited extraordinary disrespect to the
> undersigned District Judge as well as to the Magistrate Judge assigned to this case
> during the conduct of this litigation. Mr. Arleo is hereby admonished, should he
> make any future application to appear *pro hac vice* in any matter which may be
> assigned to the undersigned District Judge, he shall accompany the application with
> a copy of this Order and shall inform the Clerk of Court prior authorization of this
> court is required before Mr. Arleo will be granted any future *pro hac vice* privileges.

*Thomasson*, 2007 WL 2317111, at \*5–6. Although this Court will not discipline Mr. Arleo for the disrespectful posture he decided to adopt, it strongly encourages him against employing similar tactics again in this Court or any other court.

With that in mind, the Court finds that a disinterested third-party reviewing the decision and orders issued in this case could not reasonably question the undersigned's impartiality. Accordingly, the Defendant's § 455(a) recusal motion is denied. In that regard, it is recalled that a "judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d at 1312.

## C. AS TO THE PLAINTIFF'S MOTION FOR SANCTIONS.

28 U.S.C. § 1927 authorizes courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. To impose sanctions under § 1927, the court must make a finding of "conduct constituting or akin to bad faith." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir.2000) (citation and internal quotation marks omitted); *see also U.S. v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991) ("Bad faith is the touchstone of an award under this statute."); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir.2000) ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."). "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." *Bowler v. U.S. Immigration & Naturalization Serv.*, 901 F.Supp. 597, 605 (S.D.N.Y.1995).

Courts also possess the "inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson*, 221 F.3d at 78 (internal quotation marks

omitted) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Similar to § 1927, an award of sanctions under the court's "inherent power" requires the defendants to present "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986) (citations and internal quotation marks omitted). "A claim lacks colorable basis when it is utterly devoid of legal or factual basis." *Reichmann v. Neumann*, 553 F.Supp.2d 307, 320 (S.D.N.Y. 2008).

"Thus, 'to impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless *and* (2) the party acted for improper purposes.'" *Revson*, 221 F.3d at 79 (emphasis added) (quoting *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir.1997)). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir.1985). A court should not deem a party to have acted in bad faith if solely predicated upon that party's filing of a meritless motion. *See Eisemann v. Greene*, 204 F.3d 393 (2d Cir.2000). Moreover, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal Rules of Civil Procedure or a specific statute], the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50, 111 S.Ct. 2123; *see also Mathias v. Jacobs*, 167 F.Supp.2d 606, 623 (S.D.N.Y.2001) ("Even if the Federal Rules or a statute provides an adequate basis for imposing sanctions, a court still may resort to its inherent power as the source of the sanctions, but the Supreme Court has expressed a preference for the imposition of sanctions under the Federal Rules, when possible.").

Here, the Plaintiff submits that "when the record is reviewed as a whole," it is apparent that Mr. Arleo's actions were "motivated by a desire to delay the ultimate resolution of this case until

such time as Defendant has become judgment proof." ECF 105-1 at 10–11. As support, the Plaintiff

points to the lack of "objective reasonableness [supporting the] Defendant's multiple filings in this

case," as well as alleged correspondence in which Mr. Arleo warned the Plaintiff "that the expected

judgment resulting from Plaintiff's fee application will almost assuredly result in Defendant's

bankruptcy speaks volumes as to the motivation behind counsel's approach to this case." *Id.* at 2–

3, 11.

While the Court agrees that much of Mr. Arleo's conduct over the course of this litigation

is regrettable, and borderline frivolous, the Court disagrees that it is sanctionable. The Plaintiff

presents no evidence of bad faith on the part of Mr. Arleo other than speculation about his supposed

ill-motives gleaned from the parties' correspondence during settlement negotiations. She neither

furnishes the Court with copies of that correspondence nor attests in an affidavit to statements by

Mr. Arleo revealing his motives. As a result, it appears that the Plaintiff is asking the Court to infer

bad faith simply because of the substance (or lack thereof) of Mr. Arleo's motions.

The Court will not do so. The test for awarding sanctions under either § 1927 or the Court's

inherent power is conjunctive, meaning the Court must find both lack of merit *and* an improper

purpose. *Sierra Club*, 776 F.2d at 390. Considering Mr. Arleo and his clients submitted sworn

denials of the Plaintiff's application, which the Plaintiff fails to contest, it would be improper to

find Mr. Arleo acted in bad faith based purely on the Plaintiff's speculation. *See Gagasoules v.*

*MBF Leasing LLC*, 286 F.R.D. 205, 217 (E.D.N.Y. 2012) (Spatt, J.) (denying motion for sanctions

where plaintiffs showed a "'subjective good faith' belief in the merits of the initial complaint, and

'in the absence of any other evidence indicating an absence of a genuine belief in the validity of

the action, [the Court] conclude [s] that the record cannot support an inference of bad faith on the

17

part of the [Plaintiffs].'"(quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir.1999))).

Even were the Court permitted to take such a leap, it would still be inappropriate. As it already explained, the Court concurs with the Plaintiff that much of Mr. Arleo's behavior is unseemly. In particular, his letters to Judge Irizarry and his motion to disqualify the undersigned were unnecessary, inflammatory, and totally without merit. Mr. Arleo incurred thousands in legal fees in order to obtain a remedy which at most would have afforded him a remedy worth a fraction of that amount. Making matters worse, he engaged in his misbehavior before the Court had an opportunity to address the errors he identified. Nonetheless, his actions were not so beyond the pale that they should trigger sanctions.

Importantly, "the bar for awarding sanctions pursuant to § 1927 and the Court's inherent power is an exacting one." *Gagasoules*, 286 F.R.D. at 219. For example, in *Revson v. Cinque & Cinque*, 221 F.3d 71 (2d Cir. 2000), the Second Circuit declined to sanction the following conduct: (1) "writing a letter to [defense counsel] threatening to tarnish his reputation and subject him to the legal equivalent of a proctology exam"; (2) "publicly accusing [defense counsel] of fraud without any concrete evidence to support the claim"; (3) "threatening to send a letter to the court accusing [defense counsel] of criminal conduct if he did not capitulate to [the plaintiff's] demands"; and (4) "repeatedly attacking [defense counsel] in an offensive and demeaning fashion, including calling [defense counsel] a lawyer who ... has acted in a manner that shames all of us in the profession, a disgrace to the legal profession, and an example of why lawyers are sometimes referred to as snakes ..." *Id.* at 77. As other courts have noted, the "extreme language and tactics" at issue in *Revson* "sank as close to the threshold of the gutter as imaginable and still escape[d]

judicial sanctions," so that "[h]ow much lower such conduct could have descended before becoming punishable is difficult to fathom." *Mathias*, 167 F. Supp. 2d at 624.

Although the Court has serious misgivings about Mr. Arleo's behavior, it is not of the view that Mr. Arleo fell below "the low water mark" articulated in *Revson*. *Mathias*, 167 F. Supp. 2d at 624; *see also Wright v. Brae Burn Country Club, Inc.*, No. 08-cv-3172, 2009 WL 725012, at *6 (S.D.N.Y. Mar. 20, 2009) (finding that using "inappropriate unseemly language" and asserting "two clearly meritless claims" did not "meet[] the stringent requirements set forth in the case law for the imposition of sanctions"); *New York v. Solvent Chem*. Co., 210 F.R.D. 462, 474 (W.D.N.Y. 2002) (finding allegations of "dilatory and uncooperative conduct" did "not approach the bad faith standard required for sanctions").

Therefore, the Court denies the Plaintiff's motion for sanctions.

### III.  CONCLUSION

For the foregoing reasons, the Court (1) grants the Defendant's motion to reconsider; (2) denies the Defendant's motion to disqualify the undersigned; and (3) denies the Plaintiff's motion for sanctions. The Court hereby reduces the Plaintiff's statutory damages award from $1,000 to $500.


**SO ORDERED**.

Dated:  Central Islip, New York

April 29, 2019

___/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge