**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
LISA DATIZ,

                              Plaintiff,

                  - against -

INTERNATIONAL RECOVERY
ASSOCIATES, INC.,

                          Defendant.
-------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 15-3549 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.   PRELIMINARY STATEMENT

Plaintiff Lisa Datiz ("Plaintiff") commenced the instant action against Defendant

International Recovery Associates, Inc. ("Defendant") alleging violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). *See generally* Amended

Complaint ("Am. Compl.") [DE 17]. Plaintiff's claims are based on the content of a collection

letter delivered by Defendant to Plaintiff in an attempt to collect a debt. *See generally id*. On

September 24, 2018, Judge Spatt[1] adopted this Court's Report and Recommendation [DE 93]

and, as a result, granted Plaintiff's motion for summary judgment and denied Defendant's cross-

motion for summary judgment. *See* DE 97.

Thereafter, Plaintiff filed a motion for attorneys' fees and costs in the total amount of

$249,650.00. *See* Plaintiffs' Notice of Motion for Attorneys' Fees and Costs ("Pls.' Notice")

[DE 113]; Plaintiff's Memorandum of Law in Support of its Motion for Attorneys' Fees and

---

[1]     Judge Spatt recused himself from this matter on December 17, 2019 and the case
was reassigned to Judge Hurley. *See* DE 150; December 17, 2019 Electronic Order.

Costs ("Pl.'s Mem.") [DE 117]; Plaintiff's Reply Memorandum in Support of Motion for Attorneys' Fees and Costs ("Pl.'s Reply") [DE 125]. Defendant opposes the motion, arguing chiefly that the fee application is "an outrageous and stunning attempt to obtain unjustified fees. . . ." *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees ("Def.'s Opp'n") [DE 122] at 1; Defendant's Sur-Reply Memorandum in Response to Plaintiff's Motion for Attorneys' Fees ("Def.'s Sur-Reply") [DE 128]. Judge Spatt referred Plaintiff's motion to this Court for a Report and Recommendation as to whether the motion should be granted. *See* DE 129.

    For the reasons which follow, this Court respectfully recommends to Judge Hurley that Plaintiff's motion for attorneys' fees and costs be GRANTED, in part, and DENIED, in part, to the extent set forth in this Report and Recommendation.

## II.   BACKGROUND

### A.   Relevant Procedural Background

This case has a somewhat tortured procedural history. For that reason, the Court recites here only those entries and facts which are relevant to the instant motion and otherwise assumes the parties' familiarity with the procedural history.

In commencing this lawsuit, Plaintiff asserted three causes of action under the FDCPA and one cause of action under the New York General Business Law § 349 ("NYGBL"). *See* DE 1. Defendant failed to answer or otherwise responded to the Complaint. Consequently, the Clerk of the Court noted Defendant's default in the record on September 8, 2015. *See* DE 8. Shortly thereafter, on September 17, 2015, Defendant's newly retained attorney sought to vacate the default and Plaintiff's counsel consented. *See* DE 9, 10. On October 7, 2015, Defendant filed a motion to dismiss the Complaint [DE 14], after which Plaintiff timely filed an Amended

Complaint [DE 17].  The Amended Complaint raised an additional cause of action under the FDCPA.  *See generally* Am. Compl.  Judge Spatt denied Defendant's motion to dismiss the original Complaint as moot in light of the timely filing of the Amended Complaint in compliance with Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 15(a)(1)(B).  *See* DE 18.

Defendant then moved to dismiss the Amended Complaint [DE 21] which Plaintiff opposed [DE 29].  On August 4, 2016, Judge Spatt granted, in part, and denied, in part, Defendant's motion to dismiss.  *See* August 4, 2016 Memorandum of Decision & Order [DE 33].  The first and second causes of action brought under Section 1692(f) and Section 1692(e) of the FDCPA were dismissed.  *Id.*  These claims were based on an alleged $3.00 processing fee Defendant charged while representing to consumers that Defendant was entitled to that fee.  *Id.* at 11, 15.  However, Judge Spatt, denied Defendant's motion as to the third and fourth causes of action brought under Section 1692(g)(a)(2) and Section 1692(e) of the FDCPA, which allegations were based on Defendant's failure to adequately identify the creditor to whom Plaintiff owed a debt to in the collection letter.  *Id.* at 16-34.

On August 16, 2016, Defendant filed a motion seeking an order certifying an interlocutory appeal of Judge Spatt's decision on the motion to dismiss.  *See* DE 34.  While Defendant's motion for an interlocutory appeal was pending, Defendant filed a separate motion to vacate the portion of Judge Spatt's decision denying Defendant's motion to dismiss.[2]  *See* DE 39.  Both motions were opposed by Plaintiff.  *See* DE 35, 40.  On January 4, 2017, Judge Spatt denied Defendant's motion to vacate, as well as its motion to certify an interlocutory appeal.  *See* DE 44.

---

[2]      Defendant's motion to vacate was based primarily on its interpretation of a report by Plaintiff's expert, Alan M. Perlman, Ph.D., a forensic linguist.  *See generally* DE 39-1.

Defendant's counsel filed a letter motion to this Court on February 8, 2017 seeking a hearing regarding "Plaintiff's attempt to breach an alleged agreement to proceed to trial by jury." DE 49.  The motion accused Plaintiff's counsel of disingenuously concealing his intention to move for summary judgment until after Defendant had spent "thousands of dollars in expert witness costs and legal fees based upon [counsel for Plaintiff's] representation to [this Court] that the issue concerning the name of the creditor would be presented to a jury."  *Id.* at 2.  While Defendant's letter motion was pending before this Court, Defendant's counsel filed a letter motion on March 3, 2017 "to Compel Plaintiff to proceed to trial by jury."  DE 51.  Specifically, Defendant's counsel argued that Plaintiff should be compelled to forego summary judgment based on a putative "oral stipulation" entered into on the record at the August 23, 2016 conference before this Court.  *See* DE 51.  Plaintiff opposed both motions.  *See* DE 50, 52.

After reviewing the transcript of the August 23, 2016 conference referenced by Defendant, this Court issued an Order on May 1, 2017, finding that no binding stipulation had been entered into between the parties which would demonstrate an intent to waive summary judgment motion practice.  *See* DE 60 at 5.  The Court pointed out that Defendant had cited no authority which would permit the Court to preclude Plaintiff from engaging in summary judgment motion practice merely because Defendant "has spent a significant sum of money preparing this case for trial."  *Id*. at 7.  Quoting *Oneida Indian Nation of N.Y. v. Cty. of Oneida*, 199 F.R.D. 61, 78-79 (N.D.N.Y. 2000), the Court found that "mere time, effort and money do [] not rise to the level of substantial prejudice."  *Id.*

On July 12, 2017, Defendant filed another letter motion seeking to compel production of a notarized deposition transcript of Plaintiff's expert.  *See* DE 63.  The Court denied the motion finding, among other things, that "Defendant's counsel has not cited any statutory authority or

case law supporting the position he takes or the relief he requests" and that "[s]urely Defendant's counsel could have spent some time looking into this issue on his own to come up with the same information the Court has instead of filing a bare-bones motion." DE 65 at 1, 3-4. The Court pointed out that under Rule 30(e), a "deponent's signature is only required in situations where review of the deposition is timely requested by the deponent or another party prior to the conclusion of the deposition and where changes are ultimately made." *Id*. at 2. Defendant's counsel had not addressed this provision.

On July 11 and 12, 2017, both parties filed requests to Judge Spatt for a pre-motion conference for purposes of moving for summary judgment. *See* DE 61, 62. Judge Spatt held the pre-motion conference on July 31, 2017, at which time he concluded the case was not amenable to settlement. He then set a briefing schedule for the parties' dispositive motions. *See* DE 66. Between September 12, 2017 and October 26, 2017, the parties filed their respective motions for summary judgment. *See* DE 67–75. Counsel for both parties subsequently attempted to file notices of supplemental authority with the Court [DE 76–78], which Judge Spatt rejected, pointing out that such filings constituted improper sur-replies. *See* March 3, 2018 Electronic Order. Judge Spatt directed the parties to cease submitting such sur-replies and directed counsel to file a proper motion for authorization to make such submissions going forward. *Id*. On March 28, 2018, Judge Spatt referred the parties' cross-motions for summary judgment to this Court for a Report and Recommendation as to whether the motions should be granted. *See* DE 79. Subsequent to the referral of the motions, Defendant's counsel moved to file a sur-reply to include supplemental authority. Counsel also requested oral argument on the cross-motions. *See* DE 80. Plaintiff opposed Defendant's motion, arguing that once again, Defendant's filing was evidence of its attempts to protract the litigation. *See* DE 81. Plaintiff's counsel added that the

authority Defendant sought to introduce was an "unpublished, nonbinding, out-of-district case" which has "not been followed by any court in this Circuit … ." *Id*. That same day, Defendant filed another motion for oral argument on the cross-motions for summary judgment. *See* DE 82. Plaintiff requested that Defendant's letter be stricken, arguing that the motion was an improper reply. *See* DE 83. While the Court denied Defendant's motion to file a sur-reply, it set the cross-motions down for oral argument on June 28, 2018. *See* DE 84.

At the oral argument, Defendant's counsel requested permission to submit additional legal authority in support of its argument that the case should be heard by a jury. *See* DE 85. The Court reluctantly gave Defendant's counsel 14 days to do so, instructing that the filing was limited strictly to case citations (omitting all argument), and not to exceed two pages. *See id*. Plaintiff's counsel was given 14 days thereafter to submit opposition, which was also limited to two pages and case citations only. *See id*. On July 12, 2018, Defendant's counsel filed a letter directed to this Court indicating that he was withdrawing his request to provide further citations.[3] *See* DE 89.

After oral argument and before this Court's Report and Recommendation was issued, Defendant's counsel filed a letter to Judge Spatt on July 9, 2018 stating it was his recollection that "[Judge Spatt] adamantly stated that neither party would obtain summary judgment and that [Judge Spatt], if serving on a jury, would know the name of the creditor in the Defendant's collection letter." DE 86. To that end, Defendants' counsel requested that Judge Spatt "advise if any of the law clerks present at the summary judgment pre-motion conference took notes of the

---

[3] In response to Defendant's submission, the Court issued an Order addressing the inaccuracy of the representation made by Defendant's counsel in his submission. *See* DE 90. Defendant's counsel subsequently filed a letter in response to the Court's Order acknowledging the inaccurate characterization of the Court's previous directives. *See* DE 91.

conference" which would serve to confirm counsel's recollection.[4]  *See id*.  Defendant also sought to strike the portion of a previous Order [DE 44] in which the Court stated that "[r]ather than litigate the merits of the case, the Defendant has sought to use any procedural vehicle under the sun to create protracted and expensive litigation."  DE 86 at 2.  Plaintiff's counsel filed a letter opposing Defendant's requests and moving to strike the filing as "improper, outrageous, violative of th[e] Honorable Court's prior Orders, and patently absurd."  DE 87.  Defendant's counsel thereafter filed an "opposition" to Plaintiff's motion to strike.  *See* DE 88.

On July 31, 2018, Judge Spatt issued an Order denying Defendant's letter motion stating that "[t]he Court has never heard of such a request.  In essence, a private litigant is asking the Court to turn over its own internal documents.  The Court will not disclose whether or not its law clerks took notes during a conference. If they did, they are solely for the Court's own purposes, and not to be turned over to litigants for their ends.  To say that the Court is surprised by this unusual request is an understatement."  DE 94 at 2.  Judge Spatt also denied the request to strike certain language from the previous Order, observing that through his conduct, Defendant's counsel "has shown that the Court's statement appears to have been correct.  Despite admonishments from both this Court and Magistrate Judge A. Kathleen Tomlinson, counsel for the Defendant continues to file superfluous letter requests."  *Id*. at 3.

On July 27, 2018, this Court issued its Report and Recommendation to Judge Spatt, recommending that Plaintiff's motion for summary judgment be granted and that Defendant's cross-motion for summary judgment be denied.  *See* DE 93.  The Defendant filed objections to

---

[4]      Defendant's counsel sought to use these notes to support Defendant's position on the merits of Plaintiff's claims.  The Court further points out that Defendant's letter was characterized as a "Letter Request to Confirm Judicial Merits Opinion Statements Made at Summary Judgment Pre-Motion Conference" but essentially constituted a motion as it sought relief from the Court.

the Report and Recommendation on August 10, 2018 [DE 95], to which Plaintiff responded [DE 96]. On August 20, 2018, before the Court resolved the Defendant's objections, the Defendant submitted a letter to Chief Judge Irizarry asking her to reassign this case because, according to counsel, the "under the sun" language contained in the January 4, 2017 decision was "patently unjustified" and, therefore, showed animus or prejudice against the Defendant and/or its counsel.

Judge Spatt issued an Order on September 24, 2018 adopting this Court's Report and Recommendation in its entirety. *See* DE 97. Judge Spatt awarded Plaintiff $1,000 in statutory damages and directed Plaintiff's counsel to move for attorneys' fees and costs within 30 days. *Id.* On October 5, 2018, Defendant filed a motion for reconsideration of Judge Spatt's decision to award Plaintiff $1,000 in statutory damages – the maximum amount permitted to be awarded under the statute. *See* DE 98. Defendant argued that since Plaintiff "achieved success regarding only one of three separate FDCPA claims," Plaintiff was not entitled to the maximum amount of damages provided for in the statute, namely, $1000. DE 98-1 at 8-9.

Defendant's counsel wrote a second letter to Judge Irizarry on October 6, 2018 again asking her to reassign the case. Thereafter, Defendant filed a motion seeking to disqualify Judge Spatt from this case, arguing that Judge Spatt had displayed overt hostility toward the Defendant using the phrase "under the sun" in the text of a decision. *See* DE 103. Plaintiff subsequently filed opposition to both the motion for reconsideration and the motion to disqualify Judge Spatt, and further moved for sanctions against Defendant pursuant to 28 U.S.C. § 1927. *See* DE 104–105, 107. Throughout November 2018 there were multiple filings related to the parties' motion for reconsideration and motion for sanctions. *See* DE 108–112. On April 29, 2019, Judge Spatt issued a decision: (1) granting Defendant's motion for reconsideration and reducing Plaintiff's statutory damages from $1,000 to $500; (2) denying Defendant's motion to disqualify; and (3)

8

denying Plaintiff's motion for sanctions. *See* DE 129. Defendant subsequently sought reconsideration of Judge Spatt's decision in which he declined to recuse himself. *See* DE 131. That motion was also denied. *See* May 2, 2019 Electronic Order.

On November 30, 2018, Plaintiff moved for attorneys' fees and costs. *See* Pls.' Notice of Mot.; Pl.'s Mem.; Pl.'s Reply. In support of the motion, Plaintiff submitted the Declaration of David M. Barshay, Esq. ("Barshay Decl.") [DE 117], the Declaration of Jonathan M. Cader, Esq. ("Cader Decl.") [DE 115], and the Declaration of Craig B. Sanders, Esq. ("Sanders Decl.") [DE 116]. The Sanders Declaration appended contemporaneous billings records and expenditures for Barshay Sanders, PLLC. *See* Sanders Decl., Ex. A [DE 116-1]. Defendant filed opposition to the instant motions. *See* Def.'s Opp'n; Def.'s Sur-Reply. On April 29, 2019, Judge Spatt referred Plaintiff's motion to this Court for a Report and Recommendation as to whether the motion should be granted. *See* DE 129.

Defendant filed a motion pursuant to Rule 60(b) on June 2, 2019 to vacate the Order granting Plaintiff's motion for summary judgment. *See* DE 138. Plaintiff opposed that motion the next day claiming that the motion was "premature and procedurally improper" since Rule 60(b) did not apply to the circumstances at issue. *See* DE 139. Plaintiff's counsel requested that Judge Spatt deny the motion without the submission of formal opposition. *Id*. The same day, Defendant's counsel withdrew his motion, without prejudice to refiling the motion after a determination of the issue of attorney's fees and costs. *See* DE 141. On June 4, 2019, Judge Spatt issued an Electronic Order stating as follows:

> In light of the Defendant's [141] notice of withdrawal, the Court denies the motion to vacate without prejudice … The Court will entertain any good faith bases the Defendant may possess for obtaining relief under Rule 60(b).

June 4, 2019 Electronic Order.

Between June 2019 and July 2019, Defendant's counsel made several additional filings in connection with Plaintiff's motion for attorneys' fees pending before this Court which Plaintiff's counsel responded to. *See* DE 142–149. On June 7, 2019, Defendant filed supplemental authority in support of its opposition to Plaintiff's motion for attorneys' fees and costs [DE 142] to which Plaintiff's counsel responded [DE 143]. Defendant's counsel filed two letters on July 12, 2019, varying slightly in content, with the same supplemental authority in support of Defendant's opposition to Plaintiff's motion for attorneys' fees and costs [DE 144–145], which Plaintiff again responded to [DE 146]. On July 13, 2019, Defendant's counsel filed a reply to Plaintiff's responses. *See* DE 147.

As a result, this Court issued an Order directing counsel to "cease and desist" making any further filings on the docket. *See* July 15, 2019 Electronic Order. Thereafter, on August 29, 2019, Defendant's counsel filed a third letter purporting to include supplemental authority. *See* DE 148. The Court issued a second Order directing counsel to "cease and desist" making any further filings. *See* September 4, 2019 Electronic Order. Judge Spatt recused himself on December 17, 2019 after which the case was reassigned to Judge Hurley for all further proceedings. *See* DE 150.

III.    DISCUSSION

A.    **Entitlement to Attorneys' Fees and Costs**

Notwithstanding Plaintiff's success on two of her FDCPA claims, Defendants argue that the instant fee application should be denied in its entirety because the "grossly intolerable exaggerated fees" and "dishonest billing" constitute "special circumstances" under which an outright denial is warranted. *See* Def.'s Opp'n at 15-23. As such, the question before the Court is whether the FDCPA fee-shifting provision is mandatory and, if so, whether a court may deny an otherwise mandatory award under "special circumstances."

Under the FDCPA, "any debt collector who fails to comply with any provision of this subchapter with respect to any person *is liable* to such person in an amount equal to the sum of ... (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a *reasonable* attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3) (emphasis added). Based on the plain language of the statute, a debt collector in violation of the FDCPA "is liable" for reasonable attorney's fees and costs to a successful plaintiff, which suggests that courts do not have discretion to determine whether attorney's fees should be awarded in the first instance where a plaintiff has prevailed. *See id.* Consequently, the Second Circuit has generally viewed the attorney's fees provision of the FDCPA as mandatory, awarding costs and reasonable attorney's fees as "a matter of course" to prevailing plaintiffs. *See Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 95 n. 8 (2d Cir. 2008) (noting that "[t]he award of costs and fees to a successful plaintiff appears to be mandatory"); *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir. 1998) ("Where a plaintiff prevails, whether or not he is entitled to an award of actual or statutory damages, he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court."); *Emanuel v. Am. Credit Exch.,* 870 F.2d 805, 809 (2d Cir. 1989) ("[Plaintiff] should be awarded costs and attorney's fees; the [FDCPA] mandates such an award 'in the case of any successful action.' ") (quoting 15 U.S.C. § 1692k(a)(3)); *Nicaisse v. Mel S. Harris & Assocs., LLC,* No. 14-CV-1569, 2015 WL 5561296, at *2 (E.D.N.Y. Sept. 19, 2015) ("Because the statute requires the award of costs and a reasonable attorney's fee, the Plaintiff's motion is granted. The only question before the Court is whether the amounts sought by the Plaintiff are reasonable.") (internal quotation and citation omitted); *Wilner v. OSI Collection Servs., Inc.,* 201 F.R.D. 321, 323 (S.D.N.Y. 2001) ("[G]iven the structure of the section [§ 1692k(a)(3)], attorney's fees should not be construed as a special or

11

discretionary remedy.") (citing *Teng v. Metropolitan Retail Recovery,* 851 F. Supp. 61, 70 (E.D.N.Y.1994)).

The question which remains is whether a court may outright deny an award of attorney's fees and costs under "special circumstances," even though the FDCPA mandates such an award. The Court points out that Defendant did not cite -- and this Court did not find -- any legal authority in the Second Circuit recognizing such an exception or implementing, in effect and practice, such an exception to the FDCPA mandatory fee shifting provision. Recognizing the lack of precedent in this Circuit, Defendant argues that this Court should adopt the minority approach of the Third, Fourth, and Fifth Circuits by recognizing a "special circumstances"[5] exception to the mandatory fee-shifting provision of the FDCPA. *See* Def.'s Opp'n at 15. Specifically, Defendant relies on *Davis v. Credit Bureau of the S.,* 908 F.3d 972, 977 (5th Cir. 2018) in which the Fifth Circuit expressly adopted such an exception, holding that "special circumstances" -- such as the one presented in that case -- may warrant the denial of attorneys' fees in an FDCPA case. It is worth noting that the magistrate judge who was charged with reviewing the plaintiff's attorney's fee application in *Davis* and who recommended that fees be denied stated the following:

> It appears that this cause of action was created by counsel for the purpose of generating, in counsel's own words, an "incredibly high" fee request. While Defendant has been found to have committed a violation of the FDCPA, which ordinarily justifies an award of fees as a disincentive to future similar conduct, the Court is even more concerned about disincentivizing the conduct of Plaintiff's counsel.

---

[5]    The Third and Fourth Circuits characterize this approach as the "unusual circumstances" exception. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995); *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). The difference is primarily in semantics and not substance.

*Davis*, 908 F. 3d at 975.  The magistrate judge went on to discuss the collusion between the plaintiff and her counsel, which essentially created her claim.  *Id*.  The instant case is readily distinguishable.  Consequently, this Court is not persuaded that *Davis* is instructive with regard to FDCPA jurisprudence in the Second Circuit nor that *Davis* has any relevant application to this case.

In adopting the "special circumstances" exception, the court in *Davis* was driven by two primary considerations.  First, the court reasoned that it was appropriate to adopt the "special circumstances" exception to the FDCPA because the Fifth Circuit had previously found that "special circumstances" justified an outright denial of an award of fees in "similar contexts."  *See id*. at 976 (citing *Romain v. Walters*, 856 F.3d 402, 407 (5th Cir. 2017) (While "[p]laintiffs as prevailing parties [under 42 U.S.C. § 1988] ordinarily should recover an attorney's fee," a district court may deny an award of fees if "special circumstances would render such an award unjust.")).  However, the "similar contexts" noted by the Fifth Circuit involved fee applications brought under the civil rights statute, 42 U.S.C. § 1988(b), which states, in pertinent part, that: "the court, *in its discretion, may* allow the prevailing party ... a reasonable attorney's fee as part of the costs."  The fee-shifting provision of Section 1988 is discretionary (*i.e.,* the court's authority to award attorney's fees is discretionary); however, the fee-shifting provision of the FDCPA is mandatory (*i.e.,* the court is required to award attorney's fees).  In this Court's view, simply because a court exercises discretion where it is expressly authorized to do so, it does not stand to reason that a court may exercise that same discretion when it is *not* authorized to do.

While the Court recognizes that identical or similar fee-shifting provisions are to be applied consistently, *see Ruckelshaus v. Sierra Club,* 463 U.S. 680, 691, 103 S.Ct. 3274, 77

L.Ed.2d 938 (1983) ("[S]imilar attorney's fee provisions should be interpreted *pari passu*[6]...."), legislative provisions must also be accorded the clear meaning of the ordinary language terms they employ, *see Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (noting that in construing statutes, the Supreme Court assumes that Congress "intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'") (quotation omitted).  Since the Fifth Circuit did not reconcile or address the import of the distinction between the mandatory fee-shifting provision at issue with the discretionary one in which it had previously applied the "special circumstances" exception,[7] this Court is not persuaded to adopt the reasoning of *Davis*.

Second, the Fifth Circuit in *Davis* noted that it had adopted a narrow interpretation of the FDCPA attorney's fee provision in another case (*Johnson v. Eaton*, 80 F. 3d 148, 152 (5th Cir. 1996)) where the plaintiff had demonstrated a technical violation of the FDCPA, but had not proved actual damages and was not awarded statutory damages.  The court in *Johnson* concluded that "a reasonable attorney's fee in cases where no actual or additional damages were awarded is $0.00." *Id.* at 152.  Relying on *Johnson*, the Fifth Circuit adopted the "special circumstances" exception in *Davis* as consistent with the Fifth Circuit's narrow interpretation of the FDCPA. *Davis,* 908 F.3d at 977.

However, unlike the Fifth Circuit, the Second Circuit has rejected such an interpretation, instead holding that where a plaintiff prevails on an FDCPA claim, whether he is entitled to an

---

[6]    "Proportionally; at an equal pace; without preference < creditors of a bankrupt estate will receive distributions *pari passu* >." BLACK'S LAW DICTIONARY (9th ed. 2009).

[7]    The Court points out that this distinction also appears to have been lost on Defendant who indiscriminately cited legal authority outright denying attorneys' fees and costs without generally noting the context in which the fee application was brought.

14

award of actual or statutory damages, he should be awarded costs and reasonable attorney's fees. *See Emanuel v. Am. Credit Exch.,* 870 F.2d 805, 809 (2d Cir. 1989) ("We conclude that [plaintiff] is not entitled to actual or "additional" damages, but that, because we now find a violation, he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the district court.").  Interestingly, when the Fifth Circuit adopted its narrow interpretation, it took note of the Second Circuit's approach and expressly rejected it.  *See Johnson*, 80 F.3d at 151. ("[The Second Circuit] approach takes the language of the statute out of context and fails to give any meaning to the limiting phrase "to enforce the foregoing liability."). This Court is not persuaded to adopt the minority approach of a sister circuit which expressly disagrees with and diverges from the Second Circuit's interpretation of the same statute.

Accordingly, this Court does not find the Fifth Circuit's reasoning in *Davis* to be persuasive or applicable here.  The Court therefore declines to adopt the "special circumstances" exception to the mandatory fee-shifting provision of the FDCPA.  While the FDCPA mandates an award of attorney's fees and costs to a successful party, the statutory text still grants a court discretion to determine the reasonableness of those attorney's fees.  *See* 15 U.S.C. § 1692k(a)(3) (A successful party is entitled to "the costs of the action, together with a *reasonable* attorney's fee *as determined by the court*.") (emphasis added); *Savino, Inc.,* 164 F.3d at 87 (finding that neither a plaintiff is entitled to an award of actual or statutory damages, "he should be awarded costs and reasonable attorney's fees in amounts to be fixed *in the discretion of the court*.").  If, as Defendant advances,  the instant fee application does present "grossly intolerable exaggerated fees" and "dishonest billing," it is more appropriate to consider such factors under the lodestar analysis, where the Court actually has the authority to do so -- instead of expanding the Court's authority beyond the statutory provisions by denying outright a mandatory award.

15

**B.    Reasonableness of Attorney's Fees**

As noted, the plain language of the FDCPA authorizes an award of reasonable attorney's fees and costs as determined by the Court.  *See* 15 U.S.C. § 1692k(a); *Jacobson v. Healthcare Fin. Svcs., Inc.,* 516 F.3d 85, 95 (2d Cir. 2008) ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs...."); *Woods v. Sieger, Ross & Aguire, LLC,* No. 11-CV-5698, 2012 WL 1811628, at *5 (S.D.N.Y. May 18, 2012) (awarding reasonable attorney's fees and costs for a successful FDCPA claim.  Both the Second Circuit and the Supreme Court "have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 166 (2d Cir.2011) (*quoting Arbor Hill v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 183 (2d Cir.2008)). "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill,* 522 F.3d at 190.  "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended." *Pinzon v. Paul Lent Mech. Sys.,* No. 11-CV-3384, 2012 WL 4174725, at *5 (E.D.N.Y.2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

16

*Arbor Hill,* 522 F.3d at 184.  The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged.  *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983).  Ultimately, "[t]he reasonableness of an attorney's requested fees is a matter within the district court's discretion."  *Bond v. Welpak Corp.*, No. 15-CV-2403, 2017 WL 4325819, at *4 (E.D.N.Y. Sept. 26, 2017), *appeal dismissed* (Apr. 9, 2018).

      a.      **Reasonableness of the Hourly Rate**

To determine reasonable hourly rates, courts in the Second Circuit adhere to the forum rule, "which states that a district court should generally use the prevailing hourly rates in the district where it sits."  *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013) (citing *Simmons v. N.Y. City Transit Auth.,* 575 F.3d 170, 176 (2d Cir. 2009)).  Plaintiff requests hourly rates of $450 for Attorneys Craig B. Sanders and David M. Barshay.  *See* Pl.'s Mem. at 13.  Attorneys Craig Sanders and David Barshay are the founding partners of Barshay Sanders, PLLC, counsel of record for Plaintiff Datiz here.  They have been practicing law for over twenty years. *See* Sanders Decl. at 2; Barshay Decl. at 14.  Both attorneys focus their federal civil litigation practice on consumer protection claims.  *See* Pl.'s Mem. at 13; Barshay Decl. at 14.  Based on similar FDCPA cases in this district that have awarded Attorneys Sanders and Barshay attorneys' fees, the Court finds that a reasonable hourly rate for Attorneys Sanders and Barshay is $370.  *See Razilova v. Halstead Fin. Servs. LLC,* No. 18-CV-1668, 2019 WL 1370695, at *7 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted,* No. 18-CV-1668, 2019 WL 1364399 (E.D.N.Y. Mar. 26, 2019) (reducing Attorneys Sanders and Barshay's rates from $500 per hour to $350 for work done in FDCPA case); *Seeger v. Ross & Assocs.,* No. 18-CV-03969, 2019 WL 5695944, at *5 (E.D.N.Y. Aug. 6, 2019) (reducing Attorney Sanders and Barshay's

17

hourly rates from $450 per hour to $350 per hour for work done in FDCPA case); *Chavez v. MCS Claim Servs., Inc*, No. 15-CV-3160, 2016 WL 1171586, at \*4 (E.D.N.Y. Mar. 23, 2016) (reducing Attorneys Sanders and Barshay's rates from $575 per hour to $350 for work done on a motion for default judgment) (collecting cases).

The Court also finds that, rather than the $100 per hour fee for paralegal work, a reduced hourly rate of $85 per hour for the "administrative or paralegal" tasks performed by Attorneys Sanders and Barshay is reasonable. *See Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429, 2016 WL 7167955, at \*10 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS,* No. 15-CV-5429, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) ("As to paralegals, courts in the Eastern District of New York have held that a range of $70 to $100 per hour is a reasonable fee in [FDCPA] matters."); *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*, No. CV 06-5478, 2008 WL 445-322, at \*9 (E.D.N.Y. Sept. 30, 2008) (granting reduction of hourly rate for paralegals from $115 to $75).

Plaintiff requests an hourly rate of $350 for Attorney Jonathan M. Cader, a graduate of St. John's University School of Law, who was admitted to practice law in the State of New York in 2007. *See* Pl.'s Mem. at 13; Cader Decl. at 2. Although Attorney Cader had been practicing law for eleven years at the time relevant to the instant motion, he only recently focused his practice on consumer protection claims. *See* Cader Decl. at 2. Based on his level of experience with FDCPA matters, the Court finds that a reasonable hourly rate for Attorney Cader is $240. *See Dembitzer v. Weinberg Mediation Grp. LLC*, No. 17-CV-1734, 2018 WL 4088077, at \*7 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, No. 17-CV-1734, 2018 WL 4087921 (E.D.N.Y. Aug. 27, 2018) (reducing senior to mid-associate hourly rate in FDCPA case from $350 per hour to $250 per hour); *Arroyo v. Frontline Asset Strategies, LLC,* No. 13-CV-

18

0195, 2013 WL 1623606, at *2 (E.D.N.Y. Apr. 15, 2013) (finding reasonable an hourly rate of $225 for a senior associate in FDCPA case)

Plaintiff requests an hourly rate of $250 for Attorney Eric A. Curtis, a graduate of the University of Buffalo School of Law who was admitted to practice law in the State of New York in 2017. *See* Pl.'s Mem. at 13; Cader Decl. at 2. At the time relevant to the instant motion, Attorney Curtis had been practicing law for less than one year. Based on his level of experience, the Court finds that a reasonable hourly rate for Attorney Curtis is $150. *See Trustees of NE Carpenters Health Pension, Annuity, Apprenticeship, and Labor Mgmt. Coop. Funds v. Cali Enters., Inc.*, No. 18-CV-3556, 2019 WL 2076784, at *5 (E.D.N.Y. May 10, 2019) ("Courts in this district have concluded that approximately $200 to $325 is a reasonable hourly rate for senior associates, and that $100 to $200 is a reasonable hourly rate for more junior associates."); *McMahon-Pitts v. Sokoloff,* No. 15-CV-4975, 2017 WL 1011473, at *3 (E.D.N.Y. Mar. 15, 2017) (finding reasonable an hourly rate of $170 per hour for junior associate with two years' experience in consumer law and $200 per for junior associate with three years' experience in consumer law).

Although Plaintiff argues that higher hourly rates are warranted where, as here, the case is "hotly contested," the Court does not agree that higher hourly rates are reasonable under these circumstances. Aside from Defendant's propensity for motion practice, this case was an otherwise straightforward FDCPA matter which did not present novel or complex issues. *See Frederic v. Commonwealth Fin. Sys., Inc.,* No. 15-CV-03811, 2016 WL 1383488, at *2 (E.D.N.Y. Apr. 7, 2016) (Generally "courts in this district often reduce attorneys' rates in FDCPA cases to make them reasonable"). The fact that this case was "hotly contested," as discussed below, is quite apparent in the number of hours billed. These circumstances, however,

19

do not warrant a lodestar adjustment in the hourly *rates* billed.  In fact, the plethora of motions filed here had nothing to do with the substantive law of the FDCPA. Rather, the disputes which served most often as the bases for motion practice were focused on procedural issues concerning Defendant's position that the Plaintiff had waived the right to make a summary judgment motion.

Accordingly, based on the respective experience of each attorney and the particular circumstances of the instant action, the Court respectfully recommends to Judge Hurley that the following hourly rates are reasonable: $370 per hour for partners Attorneys Sanders and Barshay; $240 per hour for senior associate Cader; $150 for junior associate Curtis; and $85 per hour for the paralegal-equivalent work performed.

### b.    Reasonableness of the Hours Expended

A party seeking to recover attorney's fees "bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148, 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014); *Presumey v. Town of Greenwich Bd. of Educ.*, No. 3:15cv278, 2018 WL 2694442, at *7 (D. Conn. June 5, 2018).  An application for attorney's fees must be supported "by accurate, detailed, and contemporaneous time records." *La Barbera v. ASTC Labs, Inc.*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010); *see also Gesualdi v. Gen. Concrete, Inc.*, No. 11-CV-1866, 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances.").  "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.' " *Dagostino v. Computer Credit,*

*Inc.*, 238 F. Supp. 3d 404, 413 (E.D.N.Y. 2017) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

Plaintiff's counsel has submitted contemporaneous times records in support of the firm's application for attorney's fees in the amount of $249,155.00. This amount is comprised of 337.7 hours of work performed by Attorney Barshay; 173.4 hours for Attorney Sanders; 52.1 hours of for Attorney Cader; and 12.6 hours for Attorney Curtis. *See* Sanders Decl., Ex. A at 21. Defendant vehemently opposes Plaintiff's requested attorneys' fees consistently describing it as "outrageous," "grossly intolerable exaggerated," "baseless" and "stunning." *See generally* Def.'s Opp'n. Defendant's counsel argues that the District Judge purportedly empowered Plaintiff to make a "frivolous, outrages and stunning" application by "baselessly accusing [Defendant's counsel] of using every procedural method under the sun to create protracted and expensive litigation" and by its "demonstrated hostility towards" Defendant's counsel. *See* Def.'s Opp'n at 11-12. Defendant's counsel also argues that it was Plaintiff's counsel who "caused [the] 261 totals pages of docket filings" in this case and any claim that Defendant's counsel caused this case to become "hotly contested" is "demonstrably baseless." *See* Def.'s Opp'n at 9, 24.

The Court is not persuaded by the attempts of Defendant's counsel to hold himself out as lacking any responsibility for the course of events which generated continuous motion practice in this case. That assertion is belied by the record here. As both parties acknowledge, this was a simple and straightforward FDCPA case at the outset, which did not present novel issues nor require extensive discovery. It should have remained so. Notwithstanding the uncomplicated nature of this action, the case dragged on for nearly three years and generated 148 entries by the

time the last word was filed concerning the instant motion for attorney's fees.   On two occasions, this Court had to direct the parties to cease and desist from their continued filings as a result of Defendant's ongoing attempts to submit "supplemental authority" and "sur-replies/sur-responses."  *See* July 15, 2019 Electronic Order; September 4, 2019 Electronic Order.

With regard to some of the filings, the Court does not fault Defendant's counsel for making motions in good faith in an effort at zealous advocacy.  However, the Court is also mindful that such filings also required Plaintiff's counsel to at least ***read*** and often respond to such motions, thereby resulting in mounting fees and costs.  As to certain other filings made by the Defendant, it is questionable what value, if any, some of those filings had.  What is clear is that such submissions prompted Plaintiff's counsel to read and often to respond/oppose the filing, consequently expending additional time and resources on further protracted litigation. The following chart illuminates the number of motions filed in this action for which Plaintiff now seeks to recoup its fees:

| Defendant's Motions/Submissions | | |
|---|---|---|
| 1 | Mot. to Dismiss Original Compl. | DE 14 |
| 2 | Mot. to Dismiss the Amend. Compl. | DE 21 |
| 3 | Mot. for Certificate of Appealability | DE 34 |
| 4 | Mot. to Vacate Portion of the Order Denying Def.'s Mot. to Dismiss FDCPA Violation Based on the Failure to Name Creditor | DE 39 |
| 5 | Motion to Allow Def. to depose Pl.'s Alleged Expert | DE 42 |
| 6 | Letter Mot. to Amend 1/5/17 Memorandum of Decision and Order | DE 45 |
| 7 | Letter Withdrawing Letter Mot. Without Prejudice to Refile | DE 47 |
| 8 | Mot. for Hearing Re Pl.'s Attempt to Breach Agreement to Proceed to Trial by Jury | DE 49 |
| 9 | Mot. to Compel Trial by Jury | DE 51 |
| 10 | Mot. for Stay of Time to file Joint Pre-Trial Order | DE 53 |
| 11 | Letter Mot. for Pre-Motion Conference | DE 61 |
| 12 | Mot. to Compel Production of Executed Expert Deposition Transcript | DE 63 |
| 13 | Def's Mot. for Summ. Judg. | DE 67 |
| 14 | Notice of Supp. Authority in Support of Def.'s Motion for Summ. Judg. | DE 76 |
| 15 | Def.'s Second Notice of Supplemental Authority | DE 78 |

| 16 | Mot. for Leave to File Sur-Reply to Pl.'s Mot for Summ. Judg. & Oral Argument | DE 80 |
|----|---|---|
| 17 | Letter Supp. to Mot. for Oral Arg in Conjunction with Cross-Motions for Summ. Judg. | DE 82 |
| 18 | Letter Mot. to Confirm Judicial Merits Opinion Statements Made at Pre-Motion Conference | DE 86 |
| 19 | Letter Addressing Inaccurate Assertion Set Forth in Def.'s Letter dated July 12, 2018 | DE 91 |
| 20 | Defendant's Objections to Report and Recommendation on Cross-Motions for Summ. Judg. | DE 95 |
| 21 | Motion for Reconsideration of the Adoption of the Report and Recommendation on Cross-Motions for Summ. Judg. | DE 98 |
| 22 | Letter Requesting the Court to Direct that the Affidavit of Paul Zucker be Considered Part of Def.'s Mot. for Reconsideration | DE 99 |
| 23 | Reply to Response to Mot. re 98 Mot. for Reconsideration of Order Granting Pl. Full $1000 Statutory Damages | DE 106 |
| 24 | Mem. in Opp'n to Pl.'s Mot. for Sanctions | DE 108 |
| 25 | Letter Request to File Sur-Reply | DE 120 |
| 26 | Def.'s Memo in Opp'n to Motion for Attorney's Fees | DE 122 |
| 27 | Letter for Permission to File Sur-Reply | DE 126 |
| 28 | Def.'s Letter Motion for Hearing re Motion for Attorney's Fees | DE 132 |
| 29 | Letter Mot. to Amend Def.'s Opp'n to Pl.'s Mot. for Attorney's Fees | DE 142 |
| 30 | Letter Mot. to Amend Def.'s Opp'n to Pl.'s Mot. for Attorney's Fees | DE 148 |

Tellingly, among the substantive motions listed, Defendant was only partially successful on its: (1) motion for reconsideration of the adoption of the Report and Recommendation on Plaintiff's motion for summary judgment; and (2) motion to dismiss. As reflected in the docket, Defendant's vigorous defense has contributed to the length and uncharacteristically high fees of such a straightforward action. *See Douyon v. NY Med. Health Care, P.C.,* 49 F. Supp. 3d 328, 341 (E.D.N.Y. 2014), *judgment entered sub nom. Douyon v. N.Y. Med. Health Care, P.C.,* No. 10-CV-3983, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015). It is well-settled that parties "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [its adversary] in response." *Bleecker Charles Co. v. 350 Bleecker Street Apartment Corp.,* 212 F. Supp. 2d 226, 229 (S.D.N.Y. 2002) (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 580, n.11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)). Counsel for Plaintiff's efforts in this action were,

in significant part, driven by the posture of the defense.  Accordingly, the Court will not reduce

Plaintiff's attorneys' fees for the efforts expended in response to Defendant's "tenacious"

defense.

Nonetheless, having reviewed the time records, the Court finds that the attorney's fees

requested here by Plaintiff are not reasonable in the circumstances of this case and warrant a

sizable reduction for several reasons.  First, a review of the time records demonstrates that much

of the work performed in this case involved basic or intermediate tasks which could have been

undertaken by a junior associate or paralegal at a significantly reduced hourly rate.[8]  *See*

*Microsoft Corp. v. Computer Care Ctr., Inc .,* No. 06-CV-1429, 2008 WL 4179653 at *15–16

(E.D.N.Y. Sept. 10, 2008) (reducing total hours expended by counsel because "the litigation was

handled virtually single-handedly by" a partner who performed nearly all the routine daily

litigation tasks that could have been performed by an associate or even clerical staff); *Chavez v.*

*MCS Claim Services, Inc.*, 2016 WL 1171586, at *5 (E.D.N.Y. March 23, 2016) (reducing total

---

[8]    In his Declaration in support of the fee application, Attorney Barshay states that: "I understand 'billing judgment' as that term is used in the context of lodestar calculations.  As part of my billing judgment in this case, I reviewed my billing sheets to identify time entries that might be or appear duplicative or excessive and subtracted these amounts or events before compiling my hours spent on this case. For instance, I deleted many entries that reflected administrative tasks, time spent dealing with personal attacks by Defendant's counsel, and responding to the more than 600 emails I received concerning this case. As these items would not normally be charged to a client, I did not believe it was appropriate to charge my adversary for this work (the egregious facts of this case notwithstanding).  As to certain 'paralegal' tasks that I performed, I reclassified those entries at a paralegal rate of $100 per hour, rather than at my customary rate of $450 per hour as a managing partner in the firm."  Barshay Decl. ¶ 75.  This statement is essentially echoed in the Declaration of Craig Sanders.  *See* Sanders' Decl. ¶ 13. Although it appears that counsel would like the Court to take into account those referenced "deleted entries" as part of the justification for the fees sought here, the Court is unable to do so because those entries have not been provided.  Likewise, with reference to reclassifying entries performed by Attorneys Barshay and Sanders at a paralegal rate of $100 per hour, there are a significant number of other entries for which this reclassification should have occurred but did not.

hours expended by Attorneys Sanders and Barshay by 30% since "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate" and because "some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel"); *De La Paz v. Rubin & Rothman, LLC,* 2013 WL 6184425, at *4 (S.D.N.Y. 2013) ("Uniform percentage cutbacks are also warranted where, as here, attorneys seek to recover for time spent completing administrative tasks or work that should have been performed by lower-billing attorneys."). For instance, Plaintiff's counsel billed at partner rates for drafting pleadings (*i.e.* complaint, amended complaint, etc.), routinely conducting legal research, drafting the entirety of Plaintiff's motions (*i.e.,* table of contents, table of authorities [some of which presumptively is done by software programs in this day and age], notice of motion, etc.), drafting and reviewing discovery, and drafting simple letters to the Court. *See* Sanders Decl., Ex. A at 1-2, 4-5, 8, 10, 12-13. *See also Video Aided Instruction, Inc. v. Y & S Express, Inc.,* No. 96-CV-0518, 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (reducing partner's hours by 50% where his level of involvement in the case was excessive "in light of [his] qualifications and experience").

Second, the work performed in this action is duplicative of that which counsel has undertaken in similar FDCPA cases. *See Seeger v. Ross & Assocs.,* No. 18-CV-03969, 2019 WL 5695944, at *6 (E.D.N.Y. Aug. 6, 2019) (reducing total hours expended by Attorneys Sanders and Barshay by 20% because the work conducted was duplicative of the work conducted in other similar FDCPA cases handled by the same counsel); *Barshay v. Specified Credit Assocs. I, Inc.,* No. 15-CV-1044, 2016 WL 3578993, at *5 (E.D.N.Y. June 3, 2016) (same). Defendant directed the Court's attention to a memorandum of law in support of a summary judgment motion filed by Plaintiff's counsel in another matter which closely resembles the memorandum

25

of law in support of the summary judgement motion filed in this action.  *See* Def.'s Opp'n, Ex. B; Def.'s Sur-Reply, Ex. A.  The Court has also reviewed the supporting papers to the summary judgment motion in this action and notes that they are generic, brief, and only required Plaintiff's counsel to change the relevant dates, case caption, and party names.  Having reviewed both the blacklined versions of the memoranda of law and the supporting papers to the summary judgment motion filed in this action, the Court does not find that the time billed in preparing Plaintiff's summary judgment motion is "dishonest" on its face.  However, the Court does find that the 30.4 hours billed in connection with the motion is excessive considering the moderate modifications made to counsel's existing work product.[9]  Since this is not the first time courts in this district have pointed out excessive hours billed by the Barshay Sanders firm in connection with this very issue, the Court cautions counsel to be more discerning with their billing judgment as it relates to duplicated work product.  *See, e.g., Seeger,* 2019 WL 5695944, at *6; *Barshay,* 2016 WL 3578993, at *5; *Litkofsky v. P & L Acquisitions, LLC,* No. 15-CV-5429, 2016 WL 7167955, at *11 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS,* No. 15-CV-5429, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016); *Chavez,* 2016 WL 1171586, at *5.

Third, a significant portion of the hours billed by Plaintiff's counsel are excessive when compared to the straightforward nature of the case and the collective experience of counsel.  For

---

[9]    The parties disagree on the total number of hours billed in connection with Plaintiff's summary judgment motion.  Defendant contends that Plaintiff's counsel billed 23.8 hours while Plaintiff contends that counsel billed 19.6 hours.  *Compare* Pl.'s Reply at 9 *with* Def.'s Opp'n at 20.  Based on the billing records, the Court calculated that counsel spent 30.4 hours in connection with Plaintiff's motion for summary judgment.  While the parties calculated the time entries from September 10, 2017 to September 12, 2017 related to the motion, the Court found that Plaintiff's counsel began preparing Plaintiff's Rule 56.1 Statement of Undisputed Facts as early as February and March 2017, and therefore included those time entries in its calculation.  *See* Sanders Decl., Ex. A.

26

instance, Plaintiff's counsel, a founding partner in the firm, billed approximately: 4 hours to
draft the Complaint, 1.0 hour to draft a notice to vacate default judgment consisting of two
sentences, 30.8 hours to draft Plaintiff's motion for summary judgment based on duplicated work
product, 21.9 hours to draft Plaintiff's reply in support of its motion for summary judgment, 2.0
hours to review and draft a three sentence letter consenting to Defendant's request to stay the
deadline to file a joint pretrial order [DE 54], 0.6 hours to review and draft a one sentence letter
consenting to an extension request [DE 43], 36.9 hours to prepare and draft the moving papers to
the instant fee application, and 0.4 hours to review Defendant's three sentence letter apologizing
to the Court for violating its cease and desist order. Plaintiff's counsel also routinely billed 0.2
hours for reviewing electronic orders consisting of two to three sentences. As demonstrated with
Plaintiff's motion for summary judgment, where the underlying FDCPA claims are neither novel
nor fact intensive and are routinely brought by Plaintiff's counsel, there is a strong inference that
counsel is not reinventing the wheel with every filing. The time billed in this action simply does
not reflect the knowledge, efficiency, and existing work product Plaintiff's counsel have
presumably acquired and utilized in the last 20 years litigating FDCPA cases.

Fourth, the time records are replete with redundant internal consultations as well as
overstaffing, either by multiple attorneys or by overly qualified attorneys, in addition to
reflecting duplicative work. *See Dickey v. Allied Interstate, Inc.,* No. 12-CV-9359, 2013 WL
4399212, at *2 (S.D.N.Y. Aug. 1, 2013) (reducing total hours by 20% for excessive
redundant internal consultations as well as overstaffing by multiple attorneys or overly qualified
attorneys); *Community Action Agency of Green County, Inc.*, 263 F. Supp. 2d 496, 518-22
(N.D.N.Y 2003) (reducing attorneys' fees for duplicative work and excessive time spent on intra-
office conferences); *General Elec. Co. v. Compagnie Euralair, S.A.*, No. 96-CV-0884, 1997 WL

397627, at *5 (S.D.N.Y. July 3, 1997) (reducing attorneys' fees by 50% for, among other reasons, overstaffing and excessive "office conference time"). In *De La Paz*, the court recognized that "the presence and collaboration of multiple lawyers on behalf of plaintiff in the case herein, do not, by themselves, indicate needless duplication or overstating." *De La Paz,* 2013 WL 6184425, at *15 (citing *Broome v. Biondi,* 17 F.Supp.2d 230, 235 (S.D.N.Y.1997)). However, this case did not warrant the degree of duplication and collaboration reflected in the billing records. The instances of unnecessary duplicative time and overstaffing were so frequent that it would be far too onerous for the Court to conduct an item-by-item evaluation. Yet a review of any one of the twenty-one pages of time entries reflects that this case was inefficiently litigated by Plaintiff's counsel such that a client would not be willing to pay for a considerable portion of the time billed. *See Arbor Hill,* 522 F.3d at 190; *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.")

Attorneys Barshay and Sanders consistently billed for handling the same tasks and appeared to have conferred with one another regarding everything that transpired in this action, whether it be a scheduling order issued by the Court or a substantive motion filed by the Defendant. *See De La Paz,* 2013 WL 6184425, at *4 ("An across-the-board reduction is also appropriate where the records demonstrate excessive communication with co-counsel."). Although the Court recognizes that this case was "hotly contested," it was not objectively necessary for two senior partners to be simultaneously staffed on all aspects of this litigation. Compounding the problem, starting in October 2016, Attorneys Cader and Curtis also began interchangeably assisting Attorneys Barshay and Sanders, resulting in three attorneys performing the same tasks and participating in the same internal conferences. The redundant internal

consultations, overstaffing, and duplicative work reflected in the billing records warrant a sizable
reduction of the hours billed in this action.

Fifth, the time records reveal numerous instances of "block billing" whereby different
tasks are grouped into a single time entry. *See Nicaisse v. Stephens & Michaels Assocs., Inc.*,
No. CV 14-1570, 2016 WL 4367222, at *8 (E.D.N.Y. June 9, 2016), *report and recommendation
adopted,* No. 14-CV-1570, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016) ("When billing records
reveal repeated use of block billing, courts have used percentage reductions as a practical means
of trimming fat from a fee application." ) (internal quotation and citation omitted).  "While block
billing is not prohibited in this Circuit ... [it] renders it difficult to determine whether, and/or the
extent to which, the work done by [the] attorneys is duplicative or unnecessary." *Sea Spray
Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 325–26 (S.D.N.Y. 2003) (internal
quotation and citation omitted).  For instance, an entry for 5.9 hours of work performed on
October 12, 2017 by Attorney Barshay reads as follows: "Receipt and review of Defendant's
opposition to Plaintiff's motion for summary judgment; discussion with CBS; finalized
opposition brief to Defendant's motion for summary judgment; ecf filed same."  *See* Sanders
Decl., Ex. A at 13.  This is one of several instances that Plaintiff's counsel billed for multiple
tasks (*i.e.,* reviewing, drafting, conferencing, and filing) in a single block time entry.  By
grouping together various tasks in a single entry, Plaintiff's counsel makes it "difficult if not
impossible for a court to determine the reasonableness of the time spent on each of the individual
services or tasks provided." *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y.
2013) (citation omitted); *see also Bond v. Welpak Corp.*, No. 15-CV-2403, 2017 WL 4325819, at
*8 (E.D.N.Y. Sept. 26, 2017) (reducing total hours expended by 35% for, among other things,
block billing).

Lastly, the limited success obtained by Plaintiff also warrants a reduction in the attorney's fees requested.  In assessing whether the fee should be reduced due to "partial or limited success" of the plaintiff, district courts are instructed to look to "the degree of success obtained by the plaintiff" as the critical factor.  *See Kassim v. City of Schenectady,* 41 F. 3d 246, 256 (2d Cir. 2005); *Barfield v. New York City Health & Hospitals Corp.,* 537 F.3d 132, 152 (2d Cir. 2008) (citing *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).  When evaluating the degree of success, district courts look to the "'quantity and quality of the relief obtained' as compared to what the plaintiff sought to achieve."  *Barfield,* 537 F.3d at 152 (citing *Carroll v. Blinken,* 105 F.3d 79, 81 (2d Cir. 1997)).  Plaintiff initially sought statutory damages under the FDCPA and damages under the NYGBL § 349.  However, Plaintiff's success was limited in that she only succeeded on a portion of her FDCPA claims and obtained $500 in statutory damages -- 50% of the maximum amount of statutory damages possible.  *Sparkman v. Zwicker & Assocs., P.C.,* 04-CV-1143, at *8-9, 2006 WL 463939 (E.D.N.Y. Feb. 27, 2006) (reducing attorneys' fees by seventy-five percent "given the limited degree of plaintiff's success [$750 in statutory damages], [and] the absence of novel or difficult issues of law," in the FDCPA action).

The Court has considered the remaining arguments raised by Defendant and finds them unavailing.  First, Defendant emphasizes the amount of damages recovered by Plaintiff compared to the amount of fees sought, suggesting that the attorney's fees are disproportionately high.  However, since the FDCPA is a fee-shifting statute, "arguments concerning the disproportionality of attorneys' fees to damages are routinely rejected."  *Tjartjalis v. Bureau*, No. 14-CV-1412, 2016 WL 4223493, at *1-2 (E.D.N.Y. Aug. 9, 2016) (citing *Douyon*, 49 F. Supp. 3d at 340).  Where fee-shifting statutes are applied, the Second Circuit has emphatically

explained that the "whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." *Millea*, 658 F. 3d at 169 (emphasis in original).

Second, Defendant argues that Plaintiff's "frivolous motion for sanctions," "sloppiness of [agreeing] to proceed to trial, retaining an expert, and then performing a 360 turnabout," and Plaintiff's "inability to refrain from attacking" Defendant's counsel warrant reduction in the attorney's fees requested. *See* Def.'s Opp'n at 11, 14, 27. These claims are either mischaracterizations or misstatements of the record and/or do not comport with the Court's prior rulings on those issues. Therefore, the Court will not reduce Plaintiff's attorney's fees on that basis.

Having carefully considered Plaintiff's motion for attorney's fees, the Court finds that an across-the-board reduction of 60% of the hours billed by Plaintiff's counsel is appropriate. *See, e.g.*, *Sparkman*, 2006 WL 463939, at *2 (reducing total hours expended by 75% in a FDCPA action "[g]iven the limited degree of plaintiff's success, the absence of any novel or difficult issues of law (evidenced by counsel's duplication of work from earlier filed lawsuits), and counsel's unpreparedness at oral argument"); *Savino v. Computer Credit, Inc.,* 71 F. Supp. 2d 173, 176 (E.D.N.Y. 1999) (reducing total hours expended by 90% a FDCPA action because "large portions of plaintiff's counsel's actual hours were unnecessary or excessive").

Accordingly, the Court respectfully recommends that attorneys' fees be awarded in the amount of $80,615.00 as follows:

| Individual | Hourly Rate Requested | Hours Requested[10] | Hourly Rate Recommended | Hours Recommended (60% Reduction of the Hours Requested) | Total |
|---|---|---|---|---|---|
| David Barshay | $450 | 335.7 | $370 | 134.3 | $49,683.60 |
| Craig Sanders | $450 | 169.0 | $370 | 67.6 | $25,012.00 |
| Jonathan Cader | $350 | 52.1 | $240 | 20.8 | $5,001.60 |
| Eric Curtis | $250 | 11.0 | $150 | 4.4 | $660.00 |
| Paralegal | $100 | 7.6 | $85 | 3.0 | $258.40 |
| | | | | Total Attorneys' Fees: | $80,615.60 |

## C. Reasonableness of Costs

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12-CV-3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). The party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (citation omitted). In the absence of adequate substantiation, a party is not entitled to recover costs. *See, e.g., Douyon,* 49 F. Supp. 3d at 352 (declining to award costs due to an absence of documentation); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 12, 2013) (same).

---

[10]     The Court calculated the time spent by each attorney on paralegal tasks and deducted it from the total number of hours billed by that specific attorney. The cumulative time spent on paralegal tasks by all counsel is represented in the paralegal row. The Court also notes that it was unable to deduct to the time counsel spent on travel at one half the hourly rate due to the block billing of time entries. However, the 60% across-the-board reduction takes into account such deficiencies.

Plaintiff seeks to recover $495.00 in costs as follows: (1) $400.00 for the filing fee; and (2) $95.00 for service of process. *See* Sanders Decl., Ex. B [DE 116-2]. In support of these costs Plaintiff submitted a billing record itemizing the expenses but failed to substantiate these expenses with any invoices, receipts or other documentary proof. *See Lee v. Santiago*, No. 12-CV-2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("A mere assertion that a certain cost was incurred … is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation."). While the Court may take judicial notice of the $400.00 filing fee reflected on the docket report, *see Ortega v. JR Primos 2 Rest. Corp.,* No. 15-CV-9183, 2017 WL 2634172, at *8 (S.D.N.Y. June 16, 2017) (taking judicial notice of filing fee on docket), the Court declines to recommend an award of costs for the remaining expenditures in the absence of supporting documentation.

Accordingly, the Court respectfully recommends that Plaintiffs be awarded costs in the amount of $400.00.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Hurley, pursuant to 28 U.S.C. § 636(b), that Plaintiff's motion be GRANTED, in part, and DENIED, in part. Specifically, this Court respectfully recommends that Plaintiff be awarded $80,615.00 in attorneys' fees and $400.00 in costs, for a total award of $81,015.60.

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be**

33

**sent to the Chambers of the Honorable Denis R. Hurley.  Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
            March 12, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

34